594 A.2d 826

JACKSON TOWNSHIP VOLUNTEER
FIRE COMPANY, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL
BOARD (WALLET), Respondent.

Commonwealth Court of Pennsylvania.

Argued May 1, 1991.

Decided June 28, 1991.

Thomas A. Aurandt, Johnstown, for petitioner.
Timothy P. Creany, Ebensburg, for respondent.

Before CRAIG, President Judge, and GARDNER COLINS, PALLADINO, McGINLEY, SMITH, PELLEGRINI and KELLEY, JJ.

KELLEY, Judge.

The Jackson Township Volunteer Fire Company (fire company) appeals an order of the Workmen's Compensation Appeal Board (Board) which affirmed the order of the referee directing the fire company and/or its insurer to pay, pursuant to The Pennsylvania Workmen's Compensation Act (Act),[1] medical costs incurred by Patrick Wallet (Wallet) for a series of shots and blood tests required by his occupational exposure to acquired immune deficiency syndrome (AIDS) and hepatitis B viruses. We affirm.

Wallet was a volunteer of the Ambulance Association, a division of the fire company, when he responded to a call involving a fatal auto accident on July 7, 1988.[2] The victim was pronounced dead at the scene of the accident. In the process of assisting at the scene, helping other volunteers remove the victim from his car and transporting the victim's bodily remains to a nearby funeral home, Wallet got some of the victim's blood and body fluids on his hands and shirt.

The victim was found to have had AIDS and was actively infected with the hepatitis B virus. Wallet testified that after leaving the funeral home, he and several other members of the ambulance crew cleaned the blood and other fluids from the stretcher and the back of the ambulance and scrubbed them both with bleach. They then responded to a

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

2. Section 601 of the Act provides in pertinent part as follows:

   (a) In addition to those persons included within the definition of the word 'employe' as defined in section 104, 'employe' shall also include:

   (1) members of volunteer fire departments or volunteer fire companies....

   (2) all members of volunteer ambulance corps of the various municipalities....

   (3) all members of volunteer rescue and lifesaving squads of the various municipalities....

   77 P.S. § 1031.

brush fire. While on that call, Wallet was informed that Coroner John Barron wanted to see him at the hospital.

When Wallet arrived at the hospital, Barron and an unidentified physician at Conemaugh Valley Memorial Hospital informed him that arrangements had been made for him to receive tests for AIDS and hepatitis. Blood was drawn and as a precaution, Wallet received a series of injections to kill the hepatitis virus, had he contracted it. All tests came back negative.

The fire company and its insurer refused to pay for these medical services.[3] Wallet then filed a petition under the Act seeking only reimbursement for medical costs incurred. After a hearing on March 15, 1989, the referee found that Wallet's exposure to AIDS and hepatitis constituted an injury under the Act and directed the fire company and/or its insurer to pay for Wallet's tests and immunizations. The fire company appealed to the Board which affirmed the referee. This appeal followed.

■ The issue presented here is whether the referee erred in finding that Wallet's occupational exposure to AIDS and hepatitis B is an "injury" under the Act, and in requiring the company to pay for the medical services provided to him.[4] Section 306(c)(1) of the Act provides: "the employer shall provide payment for reasonable surgical and medical services ... when needed." 77 P.S. § 531. Section 306(f)(4) limits compensation for medical services to situations where an "injury" has occurred. The fire compa-

3. Wallet's claim petition indicates that he incurred expenses totalling $1,554.06 for necessary medical services. Although the company argues that there was no case or controversy before the referee because neither Wallet nor his parents have been required to pay for the medical services rendered, Wallet testified that his parents had received a bill, but that the hospital apparently decided to forego collection until these proceedings were concluded.

4. Our scope of review is limited to determining whether a violation of constitutional rights has occurred, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Commonwealth Ct. 436, 550 A.2d 1364 (1988).

ny contends that Wallet was not injured and that if he was, he has not established that his injury was causally related to his work.

■ The term "injury" has been broadly defined to encompass all work-related harm including "any hurtful or damaging effect which may be suffered by anyone." *Pawlosky v. Workmen's Compensation Appeal Board,* 514 Pa. 450, 525 A.2d 1204 (1987). Wallet claims that his injury was the risk of infection. We agree.

It is uncontroverted that Wallet was exposed to the blood and bodily fluids of an individual with AIDS and hepatitis B. His exposure prompted both the coroner and a physician at the hospital to arrange for testing and precautionary measures to be taken in the form of tests and shots. It is also clear that Wallet, who was only sixteen years old at the time of this incident, has not pursued his claim for medical expenses in bad faith. He reasonably relied on the advice/directive of the coroner and a physician who recommended and arranged for diagnostic testing and a series of preventative inoculations for hepatitis B. Wallet has not claimed an ongoing disability, nor does he seek compensation for mental anguish or distress; he simply seeks reimbursement for the necessary medical expenses incurred for his work-related exposure to two highly contagious and deadly diseases.

As we have often stated, the Act is remedial in nature and intended to benefit the worker, and its provisions should be liberally construed to effectuate its humanitarian objectives. *Krawchuk v. Philadelphia Electric Company,* 497 Pa. 115, 439 A.2d 627 (1981). This purpose would surely be thwarted should benefits be denied here, particularly considering that Wallet was injured while performing the humanitarian services of an ambulance crew volunteer.[5]

5. Our refusal to compensate such individuals for reasonable medical expenses incurred would have an undesirable *chilling effect* on both volunteerism and the willingness of all health professionals to treat AIDS and hepatitis patients.

Therefore, we hold that persons exposed to a serious risk of contracting a disease which is commonly known to be highly contagious/infectious and potentially deadly, have been "injured" for the purpose of receiving compensation under the Act. This conclusion is based on careful consideration of factors, such as the seriousness and immediacy of the risk created by exposure, as well as the reasonableness of the services sought and rendered. In this case, the actions and advice of the coroner and a physician clearly indicate that Wallet's exposure created a real, immediate, and serious risk of infection. The seriousness of Wallet's exposure is also evidenced by the urgency with which the recommended testing and precautionary treatment was pursued. These medical directives are consistent with a strong public policy in favor of restricting the spread of such serious and deadly contagious/infectious diseases as AIDS and hepatitis.

The fire company analogizes this case to a coal miner's pneumoconiosis case to imply that by granting compensation in this case, we will open the flood gates to litigation of claims involving employees who incur unwarranted and unreasonable medical expenses. The fire company hypothesizes that because exposure to coal dust may cause debilitating occupational lung diseases and even death, an employee might report to a doctor for diagnostic testing after each shift, then seek compensation for such expenses. However, this case is clearly distinguishable from a coal miner's pneumoconiosis case, and our holding is not nearly so broad.

We know of no cases in which a *single* incidence of exposure to coal dust has resulted in pneumoconiosis or death. The same cannot be said for AIDS and hepatitis, diseases so contagious and deadly that a person may contract them after being exposed only once. In addition, Wallet's expenses were not unwarranted nor unreasonable and, in fact, were incurred pursuant to the directives of health care professionals. Furthermore, as discussed above, only those persons exposed to a real and serious risk

of contracting highly contagious/infectious and potentially deadly diseases are entitled to compensation.

Finally, the fire company argues that even if Wallet has suffered an "injury," he has failed to establish through unequivocal medical testimony that his injury was causally related to his work. However, unequivocal medical testimony is only required when the causal connection between one's injury and his work is not obvious.[6] A review of the testimony in this case clearly reveals that Wallet's injury was obviously related to his work. In addition, because the fire company failed to object to Wallet's account of the diagnosis and treatment, his testimony was probative and sufficient to support the referee's decision. *Liuzzo v. McKay*, 396 Pa. 183, 152 A.2d 265 (1959).

Accordingly, we affirm the order of the Board.

## ORDER

NOW, this 28th day of June, 1991, the order of the Workmen's Compensation Appeal Board, No. A89–1762, dated October 3, 1990, is affirmed.

---

6. *Michaelson v. Workmen's Compensation Appeal Board (R.R. Leininger & Son)*, 126 Pa. Commonwealth Court 542, 560 A.2d 306 (1989).