**CROWN SERVICES, INC., Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (BECK), Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 15, 1996.

Decided Sept. 18, 1996.

---

Ned Trbovich, for Petitioner.

John G. Fahey, Jr., for Respondent.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

DOYLE, Judge.

Crown Services, Inc. (Employer) appeals from an order of the Workmen's Compensation Appeal Board (Board) which affirmed the decision of the Workers' Compensation Judge (WCJ)[1] granting William F. Beck (Claimant) benefits for a work-related injury to his lower back.

---

1. "WCJs" were referred to as "referees" prior to the 1993 amendments to the Workers' Compen-

sation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 701. *See* Act 44, Act of July

On May 13, 1987, Claimant sustained a work-related injury when three of the fingers on his left hand were caught in a piece of heavy machinery, which eventually required the partial amputation of all three of those fingers.[2] As a result of this injury, Claimant immediately began to receive temporary total disability benefits in the amount of $120.33 per week from the date of his accident. On July 29, 1988, Employer filed a modification petition[3] in which it alleged that Claimant had suffered a specific loss to the three fingers on his left hand. Although the WCJ found that the first phalanges of Claimant's three fingers had in fact been amputated, he denied the modification petition by an order dated June 8, 1992, on the grounds that Claimant continued to suffer from a residual disability to his left hand. In a decision dated February 19, 1993, the Board reversed the WCJ's decision and granted the modification petition, since the only medical testimony presented before the WCJ demonstrated that any residual disability to Claimant's left hand was a natural consequence of the amputation and did not constitute a separate injury.

On March 16, 1990, while Employer's modification petition was still pending, Claimant filed a separate claim petition in which he alleged that in addition to the injuries he sustained to his left hand due to the May 13, 1987 accident, he also sustained an injury to his lower back. In a decision dated August 20, 1992, the WCJ denied this claim petition on the sole grounds that Claimant had not given notice of his alleged back injury within 120 days as required by Sections 311 and 312

of the Act, 77 P.S. §§ 631–632. The Board again reversed the WCJ on February 19, 1993, concluding as follows:

Section 312 provides that the notice [requirement of Section 311] must 'inform the employer that a certain employee received an injury described in ordinary language ...' This does not itself require claimant to specify what physical injuries were suffered or could have been suffered. Reading that meaning into the Act would require something more than what 'ordinary language' can reasonably describe.

(Board's 2/19/93 Decision at 2.)

The Board remanded the matter to the WCJ to determine if the claimant's lower back injury was actually causally related to the accident on May 13, 1987, an issue which had been raised but not determined by the WCJ.

On remand, the WCJ found that Claimant's back injury was in fact the result of the May 13, 1987 accident. Therefore, in a decision dated March 4, 1994, the WCJ granted the claim petition and again awarded temporary total disability benefits to Claimant. In reaching this decision, the WCJ found the medical testimony of Claimant's chiropractor, Dr. Valerie Zipay, to be credible and unequivocal. Dr. Zipay testified that Claimant suffered from "chronic moderate cervical facet joint sclerosis, cervical disc degeneration, lumbar restriction of movement, and lower extremity radiculitis." (WCJ's 3/4/94 Decision at 4, Finding of Fact (F.F.) No. 5.) Dr. Zipay further concluded that Claimant's back

2, 1993, P.L. 190. Some of the decisions relevant to this case were made prior to the effective date of the 1993 amendments, and thus, were technically made by a "referee" and not by a "WCJ." However, since the final decision at issue on appeal in the present case was made in March of 1994, well after the effective date of Act 44, we will refer to the WCJ as such throughout this opinion.

2. According to Claimant's testimony, Claimant had been assigned by Employer to work on a project for the American Foam Latex Company at the time of the accident. Immediately after the accident occurred, Claimant informed his supervisor at the job site and was then transport-

ed to Allegheny General Hospital by a maintenance man. Two days after the accident, on May 15, 1987, Claimant reported the accident to Employer's personnel coordinator, Kathleen Bober Chronowski. At that time, Claimant only reported having sustained an injury to his hand, and did not mention the manifestation of pain in his back until March of 1988, approximately ten months after the accident.

3. Although Employer's modification petition is not directly at issue in this appeal, it is important for a full understanding of the facts of the present case.

condition was directly related to the May 13, 1987 accident. To rebut this testimony, Employer presented the medical reports from Dr. Jeffrey A. Cappucio and Dr. John McAllister which indicated that Claimant's back injury was the result of a preexisting degenerative condition and was not caused by the May 13, 1987 accident. However, the WCJ rejected these reports and the conclusions contained in them as not credible and not believable.

Employer filed an appeal with the Board in which it again argued that Claimant had failed to give timely notice of his back injury. Employer additionally argued that *even if* timely notice had been given by Claimant, the WCJ's finding that Claimant had sustained a work-related injury to his back was not supported by substantial evidence, specifically, by unequivocal medical evidence. By an order dated April 12, 1994, the Board affirmed the WCJ's decision. Employer's appeal to this Court followed.

On appeal, Employer raises the same issues as it raised below: (1) whether Claimant is precluded from receiving benefits for the injuries he sustained to his back because Employer was not notified of the occurrence of such injuries within 120 days after his work-related injury as required under Sections 311 and 312 of the Act; and (2) whether the WCJ's conclusion that Claimant had suffered a work-related injury was supported by substantial evidence in the record.

■ Regarding Employer's first argument, Sections 311 of the Act states in pertinent part:

Unless the employer shall have knowledge of the occurrence of injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, *and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed.*
. . .

77 P.S. § 631 (emphasis added.)

Also Section 312 of the Act provides:

The notice referred to in section three hundred and eleven shall inform the employer that a certain employee received **an injury, described in ordinary language,** in the course of his employment on or about a specified time, at or near a place specified.

77 P.S. §§ 632 (emphasis added).

Employer does not dispute that it had notice of the accident and the injury to Claimant's hand within the 120–day period required by Section 311. Rather, Employer contends that that notice was insufficient for the purpose of informing it of any injury which Claimant might have received to his lower back as a result of the same incident. Employer maintains that any injury to Claimant's back was separate and distinct from the injury to his hand, even if the injuries arose from the same accident of May 13, 1987, and that to be eligible to receive additional benefits for his back injury, Claimant was required to provide a specific notice of that injury.

Because Claimant's accident on May 13, 1987, was unwitnessed, his testimony was the only testimony of the actual accident. He testified as follows:

### DIRECT EXAMINATION

Q And of course that's another matter, but on that date, will you tell Referee Kelsey if on that date you sustained any other injuries than to your left hand?

A Oh, yeah. I hurt my back. I didn't find out until later that my neck also went out of line a little bit.

Q On May 13, 1987, you say you hurt your back. What portion of your back?

A My lower back. When I walk or stand in a still position, I get sharp pains running down my legs.

Q On that date, can you tell Referee Kelsey more specifically how it was that you did injure your back?

A  Well, see, the machine got stuffed up and they had a couple—they cut a hole in the machine and they put in plastic, thick plastic, around it plus bolts. So I took the bolts off and I was reaching in and somebody went over and turned the machine on. I started pulling the stuff out and all of the sudden, somebody yelled my name and as I turned, they had a wheel in there, almost about as long as this table, it had little spikes all over it to make the materials come through. And here when they called my name, I must have pushed my hand in further or something. The wheel was going around and it cut the tips of my fingers.

Q  You turned your body in a jerking fashion?

A  My whole body turned. The shock of it. I was in such pain that I went right to the floor.

Q  You didn't work for Crown after that day; is that correct?

A  No, no. I never worked for them no more.

Q  Is it fair to estimate you never worked anywhere since?

A  No, I haven't worked anyplace.

Q  When did you first seek medical treatment for your back problems?

A  Well, I tried to get it through Dr. Imbriglia, but he says he wasn't a back specialist.

Q  Hold on. Let me just sort of, if I can, go a little bit slowly here. You went to see Dr. Joseph Imbriglia who is a hand specialist; is that correct?

A  Yeah. Since he was taking care of me.

Q  He has given testimony in this case. You saw him for your hand.

A  Yes.

Q  Is that correct?

A  Yes.

Q  Did you see him immediately after this happened, or was it some lapse of time? If you remember.

A  It was during the time that I was getting my hand rehabilitated.

Q  What did you tell Dr. Imbriglia at that time?

A  I told him I was having back pains and they were going down into my legs and stuff. He said he wasn't a back specialist. Therefore, he recommended three other physicians on the North Side. So I took their names and everything. I took them home and my wife called them up to try to make an appointment for me. None of them would take Workmen's Compensation. So then, I eventually went to a doctor on the South Side. What was his name? I can't remember.

. . . .

### CROSS–EXAMINATION

. . . .

A  I forget what the man's name was that was in charge and that there. But I had these pillow fillings all around my hand so the blood wouldn't drip. He said, what's the matter and I said, I cut my fingers or something like that. And he said, we'll get somebody to get you up to the hospital right away. They got one of the maintenance men to run me up to the Allegheny.

(Notes of Testimony at 10–12, 17.)

While the first "employer's report of occupational injury" filed with the Bureau of Workers' Compensation mentions only the injured left hand of Claimant and three middle fingers ("tops of fingers all cut up"), this report was completed by Employer's personnel coordinator who was not on the scene of the accident. Furthermore, Claimant himself testified that he was not even aware of the injury to his back until sometime after the accident (see testimony recited above) and he then called it to the attention of Dr.

Joseph Imbriglia, the treating physician.[4] An amended "employer's report" was filed with the Bureau in March of 1988 which does make reference to Claimant's back injury.

In *Chapley v. Workmen's Compensation Appeal Board (USX Corp.)*, 164 Pa.Cmwlth. 202, 642 A.2d 597, 599, *petition for allowance of appeal denied*, 538 Pa. 649, 647 A.2d 904 (1994), we held that "Section 311 does not apply in cases where a separate injury is discovered which has arisen from the same set of circumstances for which an employer has been timely notified and has had a full opportunity for investigation."[5] Employer, though, relying on our recent decision in *Pennsylvania Mines Corporation/Greenwich Collieries v. Workmen's Compensation Appeal Board (Mitchell)*, 166 Pa.Cmwlth. 58, 646 A.2d 28 (1994), argues that Section 311 does apply under the facts of this case.

In *Pennsylvania Mines*, the claimant had sustained a previous (1980) work injury to his back and had received intermittent compensation for this injury under sporadic supplemental agreements and final receipts; the maximum total disability rate paid for this injury was $242 per week. The claimant was back to work when, on February 1, 1988, he lacerated his left thumb and index finger. He received total disability benefits for this second injury at the then maximum allowable rates ($377 per week), until he signed a final receipt dated April 15, 1988. Approximately one month later the claimant again began receiving benefits for a recurrence of his first injury—the injury to his back—pursuant to a supplemental agreement dated May 25, 1988. Then, on February 26, 1991, the claimant filed a petition for review alleging that he had suffered a second discrete *back* injury at the time of his *second* 1988 injury when he lacerated his thumb.

The referee set aside the final receipt relating to the claimant's hand injury, finding that Claimant had sustained both a hand injury **and** a back injury on February 1, 1988, and awarded benefits for the back injury only, at the higher rate of $377, without making a finding of whether or not Employer had received notice under Section 311. The Board affirmed. This Court held that Section 311 did apply and that Employer might have been misled by the notice of compensation payable for the hand injury since it might have failed to alert Employer, *under those circumstances*, that there was a second distinct back injury suffered by the claimant on February 1, 1988. We vacated the decision of the Board and remanded the case for a determination of whether the claimant had given sufficient notice of his back injury under Section 311 of the Act. Significantly, we did not address the issue of the sufficiency of the notice that is required by Section 311 in our decision in *Pennsylvania Mines*, the precise question currently at issue in the present appeal.

■ Therefore, while we agree with Employer that Section 311 *is* applicable to this case, our inquiry does not end there; we must also determine the **adequacy** of the notice that Claimant gave to Employer. In the present appeal, unlike *Pennsylvania Mines*, there was only one accident, and it is the sufficiency of the notice after that accident which is at the core of the appeal.

To determine the required content of a Section 311 notice, we must look at Section 312 of the Act, 77 P.S. § 632, which states:

---

4. Dr. Imbriglia is the physician who first saw Claimant in the emergency room of the Allegheny General Hospital immediately following the accident.

5. In *Chapley*, the claimant had sustained a work-related physical injury and timely notice was given to his employer. The claimant later developed a psychological disability which allegedly resulted from the initial work-related accident, but which was unknown to the claimant at that time. Subsequently, but more than 120 days after the accident, the claimant informed his employer of his psychological disability. The WCJ and the Board denied benefits to the claimant on the grounds that he had failed to give timely notice under Section 311 of the Act. We reversed, holding that Section 311 of the Act is inapplicable where the employer has been given timely notice of the accident which caused the claimant's disability and had a full opportunity to investigate.

"[t]he notice referred to in section three hundred and eleven shall inform the employer that a certain employe received an injury, **described in ordinary language**, in the course of his employment on or about a specified time, at or near a place specified." (Emphasis added.)

The term "injury" is defined, in pertinent part, in Section 301(c)(1) of the Act as:

an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto, *and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury* ....

77 P.S. § 411(1) (emphasis added). The term "injury" has been previously interpreted as encompassing "all work-related harm to an employee 'regardless of his previous physical condition.'" *Pawlosky v. Workmen's Compensation Appeal Board*, 514 Pa. 450, 458, 525 A.2d 1204, 1209 (1987) (quoting Section 301(c) of the Act, 77 P.S. § 411(1)). In this respect, we interpret this language liberally and in favor of Claimant in accordance with the remedial and humanitarian purpose underlying the Act. *See Jackson Township Volunteer Fire Co. v. Workmen's Compensation Appeal Board (Wallet)*, 140 Pa.Cmwlth. 620, 594 A.2d 826 (1991).

■ We further find that for the purposes of Sections 311 and 312 of the Act, **the term "injury" includes any medical malady *reasonably* associated with the work place incident or injury**, as well as any subsequent causally related medical problems stemming from that injury.

We believe, and so hold, that in this case the injury to Claimant's back was clearly a further manifestation of the one accident and did not constitute a "separate injury" for notice purposes. By receiving notice of Claimant's accident, Employer was on notice for both the injury to Claimant's hand and the injury to his back. At the time of the accident, Employer was free to have Claimant examined by its own doctors and conduct tests to determine the extent of any injuries he might have suffered. *See id.* Unlike the claimant in *Pennsylvania Mines*, the Claimant in the instant case did not have a past history of back ailments or previous workers' compensation claims which would have misled Employer so that it would not recognize that the back injury constituted a new work-related injury.

We cannot expect a claimant whose fingers have just been so severely lacerated in an accident that they have to be partially amputated to recite with great detail to the employer's personnel director every other part of his body which is injured, especially if the pain associated with that injury does not exhibit itself until a later time. If we were to accept Employer's position, claimants would be required to document with medical precision the parameters of their work-related injuries and provide their employers with this information within 120 days of their injuries, or waive any entitlement to compensation forever. While claimants may properly be required to provide proof of the full extent of their injuries at a later hearing before a the compensation authorities, the notice requirements of the Act simply do not impose such an onerous burden upon injured employees. Accordingly, we reject Employer's first argument that Claimant did not provide timely notice of the injury to his back resulting from his work-related accident of May 13, 1987.

■ Employer's second argument is that the WCJ's conclusion, that Claimant had suffered a work-related injury to his back, was not supported by substantial evidence.[6] In the present case, Claimant had the burden of proving that his back injury arose in the course of his employment and was related to that employment. *See Rossi v. Workmen's Compensation Appeal Board (City of Hazle-*

---

6. Substantial evidence is such relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Grabish v. Work-* *men's Compensation Appeal Board (Trueform Foundations, Inc.)*, 70 Pa.Cmwlth. 542, 453 A.2d 710 (1982).

**1340**

ton), 164 Pa.Cmwlth. 233, 642 A.2d 1153, petition for allowance of appeal denied, 539 Pa. 660, 651 A.2d 545 (1994). Having reviewed the record in its entirety we must agree with the WCJ that Claimant met this burden.

■ The WCJ is the ultimate fact finder in workers' compensation cases, having the sole authority to assess the credibility of witnesses and resolve conflicting testimony. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992). The WCJ found the testimony of Claimant's doctor, Dr. Zipay, to be credible and accepted that testimony over the medical reports offered into evidence by Employer.[7] Notwithstanding the fact Employer disagrees with Dr. Zipay's medical opinion in this case, Dr. Zipay testified that Claimant had suffered an injury to his back which was directly related to the May 13, 1987 work-related accident. Viewing her testimony as a whole, we agree with the WCJ that Dr. Zipay's testimony was unequivocal and constituted substantial, competent evidence supporting the grant of benefits to Claimant.[8] *See ARMCO, Inc. v. Workmen's Compensation Appeal Board (Carrodus)*, 139 Pa.Cmwlth. 326, 590 A.2d 827 (determination of whether medical testimony is unequivocal is a question of law and requires considering expert's testimony as a

whole), *petition for allowance of appeal denied*, 529 Pa. 636, 600 A.2d 955 (1991).

Accordingly, we affirm.

### *ORDER*

NOW, September 18, 1996, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.

SMITH, J., dissents.

FRIEDMAN, Judge, dissenting.

Because I believe that the majority opinion advocates a crystal ball standard for employers where notice is concerned, I respectfully dissent. Indeed, I fully agree with the dissenting opinion, written by Judge Kelley, that the notice of the work accident of May 13, 1987, and the resulting injury to Claimant's *hand*, was insufficient under sections 311 and 312 of the Workers' Compensation Act (Act)[1] to inform Employer of an injury Claimant might have received to his *lower back* as a result of that same incident. However, I write separately because I believe that our current caselaw already provides a method for resolving the type of situation presented by this case which neither the majority nor the dissent mentions.[2]

In *Bolitch v. Workmen's Compensation Appeal Board (Volkswagon of America,*

7. We note that under the *Walker* rule, this Court has held that a medical report, even if unobjected to, does not constitute substantial evidence and cannot support an independent finding of a WCJ. *See McCray v. Workmen's Compensation Appeal Board (Preschool Development Programs, Inc.)*, 167 Pa.Cmwlth. 402, 648 A.2d 348 (1994), *petition for allowance of appeal denied*, 540 Pa. 608, 655 A.2d 995 (1995); *Flanagan v. Workmen's Compensation Appeal Board (U.S. Steel Corp.)*, 143 Pa.Cmwlth. 92, 598 A.2d 613 (1991).

8. Employer suggests that Dr. Zipay did not make as thorough an investigation of Claimant's entire medical history as was required, and made unwarranted assumptions and inferences in reaching her medical conclusion. However, we believe these criticisms relate to the weight of the evidence and do not detract from the competency of Dr. Zipay's testimony. This Court has previously held that the mere fact that a medical witness admits to uncertainty, doubt or a lack of information with respect to certain medical de-

tails does not mean that the testimony of that witness is equivocal unless the witness recants his or her original medical opinion regarding the claimant. *See Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas)*, 77 Pa.Cmwlth. 202, 465 A.2d 132 (1983). Once Claimant established his prima facie case, Employer had the burden to rebut that case through its own medical evidence. By failing to present any medical **testimony**, and instead relying solely on cross-examination and medical reports, Employer would have prevailed in this case only if the WCJ rejected Dr. Zipay's testimony.

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 631–632.

2. I also write separately because I wish to note the majority's unnecessary reference to *Chapley v. Workmen's Compensation Appeal Board (USX Corp.)*, 164 Pa.Cmwlth. 202, 205, 642 A.2d 597, 599, *appeal denied*, 538 Pa. 649, 647 A.2d 904

*Inc.)*, 132 Pa.Cmwlth. 110, 572 A.2d 39, *appeal denied*, 526 Pa. 639, 584 A.2d 321 (1990), we recognized that, although it is not necessary for an injured worker to know the precise medical diagnosis of an injury, that worker needs to know the *nature* of the injury and its relationship to employment in order for the 120–day period of section 311 of the Act to commence. We noted that where the relationship of the injury to the employment is not immediately known to the employee, the 120–day period does not begin to run until the employee either knows, or should know, of such a relationship. *E.J.T. Construction, Inc. v. Workmen's Compensation Appeal Board (Larusso)*, 47 Pa.Cmwlth.

492, 408 A.2d 226 (1979). Thus, we held that, in cases where an injured worker claims he did not know of the relationship between his employment and his injury,[3] it is incumbent upon the WCJ to make a factual finding as to when the injured worker knew, or reasonably should have known, of the relationship.[4] *Bolitch*.

Here, the WCJ made no finding of fact as to when Claimant knew or reasonably should have known of his alleged back injury and its relationship to his employment. Accordingly, because appellate review is impossible without this information, I would remand the case so that the WCJ could make the necessary finding as to when the notice period

---

(1994), which the majority quotes as saying, "Section 311 *does not apply* in ·cases where a separate injury is discovered which has arisen from the same set of circumstances for which an employer has been timely notified and has had a full opportunity for investigation." (Emphasis added.) I feel that this language in *Chapley* is unfortunate. Clearly, section 311 always applies to a workmen's compensation claim. Indeed, notice to an employer of an injury arising in the course of employment is a prerequisite to compensation under the Act. *Pennsylvania Mines Corporation/Greenwich Collieries v. Workmen's Compensation Appeal Board (Mitchell)*, 166 Pa. Cmwlth. 58, 646 A.2d 28 (1994); *Philadelphia v. Workmen's Compensation Appeal Board (Wills)*, 152 Pa.Cmwlth. 198, 618 A.2d 1162 (1992), *appeal denied*, 536 Pa. 635, 637 A.2d 295 (1993). However, as we commented in *Pennsylvania Mines*, *Chapley* represents the type of case where a physical injury subsequently gives rise to a psychological injury. We noted that, under such circumstances, section 311 "does not apply" because, even the most extensive investigation by Employer after notice of the work-related physical injury can turn up nothing since the subsequent psychological injury *has not yet occurred*. Clearly, a notice requirement cannot pertain to a nonexistent injury. Here, however, Claimant maintains that a single work incident has resulted in two physical injuries which occurred simultaneously to different parts of the body; therefore, as the majority recognizes, section 311 naturally applies.

3. Here, Claimant testifies that he was unaware of the back injury at the time of the accident because symptoms of that injury did not occur until some time later.

4. I note that, in holding as it does, the majority concerns itself with the injustice to an employee if it were to adopt Employer's argument that Claimant's notice was untimely, stating, "[i]f we

were to accept Employer's position, claimants would be required to document with medical precision the parameters of their work-related injuries and provide their employers with this information within 120 days of their injuries, or waive any entitlement to compensation forever." (Majority op. at 1339.)

On the other hand, Judge Kelley, in his dissent, centers on the difficulties an employer would face under the majority's determination, stating, "I believe that the notice requirements ... do not impose an obligation upon an employer, as the majority suggests, to have a claimant examined by its own doctors and to conduct tests to determine the extent of any injuries a claimant might have suffered in order to defend against any possible injury which may manifest itself outside the 120–day notice period. Under the majority's reasoning, the notice requirements are expanded unfairly which results in an employer being forced to take expensive, and possibly unnecessary, measures to protect itself against any and all future injuries for which a claimant may later allege arose out of the occurrence of an initial injury." (Dissenting op. at 1342.)

In any analysis of a notice issue, we must consistently bear in mind the purpose behind the Act's notice provision, which is to provide an employer with a full opportunity to investigate a claimed injury in order to exercise its right to determine the legitimacy of the claim. In fulfilling this purpose, we should not unfairly burden either the employer or the employee. By applying *Bolitch* and *E.J.T.*, we do not have to because, under those cases, an employer need only verify those injuries of which he has been sufficiently notified, and an employee always has the full 120–day period allotted for notification of an injury, even if he only becomes aware of that injury at some later time. Thus, by dealing with these types of situations under *Bolitch* and *E.J.T.*, we preserve the intent of the legislature and remain fair to both the employer and the employee.

began to run.[5]  *E.J.T.*

KELLEY, Judge, dissenting.

I respectfully dissent. I believe that the majority has taken the remedial and humanitarian purposes underlying the Act too extensively by construing injury for purposes of the notice provisions of section 311, 77 P.S. § 631.

The majority states that "for the purposes of Sections 311 and 312 of the Act, **the term 'injury' includes any medical malady *reasonably* associated with the workplace incident or injury,** as well as any subsequent causally related medical problems stemming from that injury." Majority Opinion, p. 1339. I agree with the majority's reasoning that the notice requirements of the Act do not place the onerous burden upon a claimant to document with medical precision the parameters of their work related injuries and provide their employers with this information within 120 days of their injuries. However, I believe that the notice requirements also do not impose an obligation upon an employer, as the majority suggests, to have a claimant examined by its own doctors and to conduct tests to determine the extent of any injuries a claimant might have suffered in order to defend against any possible injury which may manifest itself outside the 120–day notice period.

Under the majority's reasoning, the notice requirements are expanded unfairly which results in an employer being forced to take expensive, and possibly unnecessary, measures to protect itself against any and all future injuries for which a claimant may later allege arose out of the occurrence of an initial injury. The resulting unfairness of the majority's reasoning is particularly evident when, as here, the initial injury for which a claim was made occurred to the fingers on the Claimant's hand and the later injury which was claimed to have occurred out of the same incident was to an entirely different body part, the Claimant's lower back.

Accordingly, I would reverse.

---

5. As to the question of when Claimant knew or should have known that he sustained a work-related injury to his back, I note the following:

   During the course of treatment for his fingers, Claimant complained to Dr. Imbriglia about back pain. (WCJ's Finding of Fact, No. 6.) In fact, on November 17, 1987, Claimant's wife wrote a note to Dr. Imbriglia, which Claimant signed, indicating that Claimant had terrible pain in the area of his left kidney, and that "This is very definitely in connection with my injuries!" (WCJ's Finding of Fact, No. 6(c); O.R., Defendant's Exh. A.) Claimant testified that he sent the note because:

   Well, see, I had *told him previously* but he didn't do anything. I figured I better put it down in writing to show that I told him that.

(O.R., Hearing of May 7, 1990, N.T. at 20.) (Emphasis added.) This evidence indicates that Claimant knew that he had a work-related back injury *before* November 17, 1987. Indeed, Claimant also testified that he sought treatment for his back pain from Dr. Seltzer in September of 1987. (O.R., Hearing of May 7, 1990, N.T. at 12–13, 21.)

The WCJ found that Claimant first gave Employer notice of the back injury on March 16, 1988. (WCJ's Finding of Fact. No. 9.) If the WCJ should find on remand, based on the evidence above, that Claimant knew about a work-related back injury *before* November 17, 1987, then Claimant failed to give timely notice of the back injury.