IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Insteel Industries, : 
               Petitioner : 
                : 
            v. : No: 1064 C.D. 2015
                : Submitted: January 22, 2016
Workers' Compensation : 
Appeal Board (Litzenberger), : 
            Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                FILED: May 18, 2016

      Insteel Industries (Employer) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) granting a claim petition for medical expenses filed by Mark Litzenberger (Claimant) under the Workers' Compensation Act (Act).[1] In doing so, the Board reversed the decision of the Workers' Compensation Judge (WCJ), who held that the injuries for which Claimant received medical treatment were not work-related. For the reasons that follow, we reverse.

      Claimant was employed as a machine operator for Employer. On October 10, 2012, Claimant filed a claim petition alleging that on July 25, 2012, he passed out and hit his head on a roll of steel wire and the concrete floor at Employer's facility. According to the claim petition, Claimant sustained "[c]losed head trauma resulting in blood clot and bleeding in/on the brain." Reproduced

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1 – 1041.1, 2501 – 2708.

Record at 4a (R.R. ___). He sought total disability benefits from July 26, 2012, and ongoing as well as payment of his medical bills and counsel fees. Employer filed a timely answer denying the allegations of the claim petition. The matter was assigned to a WCJ.

At the initial hearing on November 13, 2012, Claimant's counsel advised the WCJ that Claimant had returned to work with a different employer on November 4, 2012. When the hearing continued on February 12, 2013, Claimant's counsel amended the claim petition to seek payment of medical bills only. Claimant's counsel further agreed that the inciting event, *i.e.*, Claimant fainting, was not work-related. Rather, Claimant's theory was that he sustained a work-related injury, which he described as a "headache and neck pain," when he hit his head on the roll of steel wire. Notes of Testimony, 2/12/2013, at 11 (N.T. ___); R.R. 34a.

Claimant testified that he had worked for Employer for two days when the fainting incident occurred on July 25, 2012. That morning, Claimant was being trained by a co-worker, Jorge Perez, to operate an overhead crane when he "got such like a headache and I felt faint and I just fell --- I just remember falling backwards. When I fell backwards, I could see stars, like a flash." N.T. 14-15; R.R. 37a-38a. Claimant passed out for a period of time and when he regained consciousness he was lying "up against the steel roll [with his] neck ... to the left on the concrete floor." N.T. 15; R.R. 38a. Claimant testified that when he tried to get up an unidentified person said "stay, you can't get up, you fell backwards, you hit your head." *Id.* Claimant testified that the pain he experienced after the fall in the right side of his head and at the base of his skull was "20 times" worse than the "unusual headache" he experienced before he passed out. N.T. 16, 17, 21; R.R.

2

39a, 40a, 44a. Claimant had no recollection of striking his head, and the fall produced neither blood nor a bump on his head.

Claimant testified that he was transported by ambulance to the Hazleton Health Alliance. The doctors were not sure whether he had a stroke or hit his head. Claimant was in and out of consciousness at the time. Claimant testified that he was transported by helicopter to Lehigh Valley Hospital because of a blood clot at the base of his head. Diagnostic tests done at Lehigh Valley Hospital were negative. Claimant testified that he was released from Lehigh Valley Hospital the same day and cleared to go back to work. In support of his claim petition, Claimant submitted medical bills totaling approximately $65,000 for the treatment he received on July 25, 2012, July 26, 2012, and August 3, 2012. R.R. 91a-103a.

Employer presented the testimony of Jorge Perez, the crane operator who was training Claimant at the time of the incident. Perez testified that Claimant was standing approximately two feet away from him when he observed Claimant faint. According to Perez, Claimant "dropped like a rag doll. Just kind of like coiled up." N.T. 34; R.R. 57a. According to Perez, Claimant did not strike his head on the steel coil or the concrete; rather, Claimant's body twisted and he struck the coil with his shoulder and slid down the coil to the floor. Perez yelled for someone to call 911 and went to tend to Claimant. Perez did not observe any bleeding or bumps on Claimant's head.

Scott Stumpf, Employer's lead maintenance man, testified that he did not observe Claimant fall and arrived on the scene approximately one minute after the incident. He observed Claimant lying with his shoulder against the steel coil. He laid Claimant flat on the floor and rubbed his sternum. He also spoke to

3

Claimant, who was in and out of consciousness and appeared confused. Stumpf did not observe any bumps, bruises or blood on Claimant's head. Stumpf denied telling Claimant that he struck his head. Stumpf further testified that he did not speak to the EMS personnel about the mechanism of Claimant's fall and did not have any conversations with Claimant's wife.

Claimant's wife, Christine Litzenberger, testified that she received a telephone call from an employee named Maureen in Employer's Human Resources Department, who advised her that Claimant had some kind of accident at work. Claimant's wife went to Employer's facility and spoke to a shift manager/supervisor named Dave, who informed her that Claimant "fell against the big steel rolls [and] really banged his head off ... the concrete floor." N.T. 54; R.R. 77a.

In response to the testimony of Claimant's wife, Employer presented the testimony of William Gary Logan, who confirmed that he was the manager who spoke to her the day of Claimant's accident.[2] Logan testified that he told Claimant's wife that he thought Claimant possibly had a stroke or heart attack. He did not tell her that Claimant had struck his head.

Employer offered into evidence the EMS Report from July 25, 2012. It stated that EMS personnel were dispatched to Employer's facility "for a man down with chest pain." R.R. 104a. It also stated that the patient complained of weakness and chest pain with numbness in his arms; there were no outward signs of trauma. The report stated that EMS personnel were told that Claimant was seen "passing out landing backwards into rolls of wire then falling to ground." *Id.*

---

[2] Claimant's wife was recalled to the stand and confirmed that Logan was the gentleman she talked to at Employer's facility.

4

A report from Hazleton General Hospital stated that Claimant "was at work [and] apparently collapsed. Fell against some steel rolls stacked against a wall." R.R. 107a. Claimant reported "a headache and chest pain," "[n]o head injury," and "weakness of the right arm, right leg and right foot." *Id.* The clinical impression was an "acute cerebrovascular accident (thrombotic stroke)." R.R. 109a. A teleneurology consultation report done at Hazleton General Hospital on the day of the incident noted that Claimant "started having [a] headache with neck pain and fell backwards." R.R. 122a. The doctor concluded that Claimant had a "probable basilar clot causing a brainstem ischemic stroke" and recommended he be immediately flown to Lehigh Valley Hospital for treatment. R.R. 123a.

Upon admission to Lehigh Valley Hospital for a stroke alert, Claimant reported that

> [a]t 6:15 a.m., he had a sudden onset of sharp pain in the right side of his head. He also felt the right side of his body go numb. At the same time, he saw a quick flash of light in both his eyes. The next thing he remembered, he was on the floor being treated by EMS. Per witnesses, the patient took a fall to the floor and hit his head.

R.R. 128a. A blood clot was ruled out and Claimant was discharged with no employment restrictions.

On January 4, 2013, Claimant was examined by Employer's Independent Medical Examination (IME) physician, Richard Bennett, M.D. Claimant reported that on the morning of July 25, 2012, he was at work when he developed pain in his head and suddenly lost consciousness. He stated he fell backwards and was unresponsive for a brief period of time. Claimant did not tell Dr. Bennett that he hit his head, or that he was told that he hit his head, on the date of the incident. At the time of the IME, Claimant was not receiving any medical

5

care or treatment related to the incident. Claimant informed Dr. Bennett that he had started another job as a warehouse attendant and forklift operator with no restrictions. Dr. Bennett opined that Claimant had recovered from a syncope episode of July 25, 2012, and required no further treatment or diagnostic testing. He noted that the basis for Claimant's loss of consciousness was unclear, and that there was no evidence of closed head trauma or blood clot or bleeding on the brain. In a supplemental IME report, Dr. Bennett stated that he had received additional medical records of Claimant's treatment on July 25, 2012, and July 26, 2012, and his diagnosis of a possible syncope episode on July 25, 2012, had not changed. Dr. Bennett concluded that there were no recorded outward signs of trauma or treatment for a head injury at the time of the incident.

The WCJ observed that the only factual dispute in the case was whether Claimant hit his head when he fainted. Given Claimant's mental and physical state at the time as well as his wife's distraught state of mind, the WCJ assigned little weight to their recollection of events. The WCJ credited Gary Logan's testimony that he did not tell Claimant's wife that Claimant hit his head. The WCJ found most credible the testimony of Jorge Perez that Claimant did not strike his head when he fell because Perez witnessed the incident. Perez's testimony was also corroborated by the fact that neither he nor Stumpf saw signs of trauma on Claimant's head, such as blood or a bump.

The WCJ further noted that the EMS and hospital records contained no documentation or diagnosis of a head injury. These records relayed the health care providers' concerns that Claimant had a heart attack, stroke or seizure, but they contained "no conclusive determination as to what caused Claimant to faint." WCJ Decision at 3; Finding of Fact No. 13. The WCJ concluded:

6

> There was no evidence that Claimant's work or a condition of the workplace itself caused Claimant to faint and there was no evidence that Claimant injured himself as a result of falling. … The subject treatment was performed in order to determine the cause of the fainting episode and to rule out any serious injury, but not to treat any injury Claimant believes he may have sustained as a result of the fainting episode.

*Id*. Accordingly, the WCJ denied the claim petition. Claimant appealed.

The Board reversed the WCJ's decision, holding that the WCJ erred in denying payment of Claimant's medical expenses. The Board held that "in these circumstances, where the record reflects that a fall onto a concrete floor occurred at work resulting in *an apparent risk of head injury*, payment of reasonable medical expenses for precautionary measures, including testing, is appropriate…." Board Adjudication at 9 (emphasis added). The Board further held that the "medical expenses at issue were for precautionary measures, including testing, performed soon after the work incident pursuant to the directives of health care professionals based on reports they received from witnesses concerning the nature of Claimant's work incident." *Id*. at 10. Accordingly, the Board held that Employer was liable for the payment of Claimant's medical expenses for the precautionary measures related to the injury, which was the "risk of harm flowing from the work incident." *Id*. Employer now petitions for this Court's review.

On appeal,[3] Employer raises several issues. First, Employer argues that the Board erred because the WCJ's decision that Claimant's fall did not cause an injury was supported by substantial, competent evidence. Second, Employer

---

[3] In reviewing an order of the Board, this Court determines whether constitutional rights were violated, whether the adjudication is in accordance with law or whether the necessary findings of fact are supported by substantial evidence. *Milner v. Workers' Compensation Appeal Board (Main Line Endoscopy Center)*, 995 A.2d 492, 495 n.2 (Pa. Cmwlth. 2010) (citing Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704).

7

argues that the Board erred in relying on precedent that awarded benefits to a claimant that underwent medical tests because of risk of harm caused by his job. Third, Employer argues that the Board erred in concluding that Employer was responsible for Claimant's medical expenses because the health care professionals in this case treated him for a risk of a head injury as a result of his fall at work. Employer contends that the record supports the WCJ's determination that Claimant's medical treatment was directed toward determining the cause of his fainting episode.[4]

Employer first argues that the Board erred in reversing the WCJ's decision that Claimant did not prove he sustained a work-related injury. Employer contends that the substantial, competent evidence of record supports the WCJ's conclusion that Claimant's fall at work did not cause an injury. We agree.

For purposes of the Act, an "injury" is "an injury to an employe, regardless of his previous physical condition … arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury[.]" Section 301(c)(1) of the Act, 77 P.S. §411(1). In a claim petition proceeding, the claimant has the burden of establishing all elements necessary for an award of benefits. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). The claimant's burden includes proving that he sustained an injury related to his employment. *Good Shepherd Workshop v. Workmen's Compensation Appeal Board (Caffrey)*, 555 A.2d 1374, 1377 (Pa. Cmwlth. 1989).

---

[4] Claimant was precluded from filing a brief in this appeal.

8

In *McCarthy v. General Electric Co.*, 143 A. 116 (Pa. 1928), our Supreme Court addressed a factual situation like the present one, where a claimant fell at work for unknown reasons. The Court held that if a claimant falls while working on the employer's premises, any resulting injury is compensable. The claimant has no burden to show an exact cause for why he fell. The Court found it not "material that the employee fell because he became dizzy or unconscious ... [or because of] some disease with which the employee was afflicted ... [or] a lapse of the brain ... [or] from an unexplained cause[.]" *Id*. at 118. In the case *sub judice*, it is undisputed that Claimant fell on Employer's premises while performing his work duties. However, Claimant also had to prove that the fall caused an injury. *Id*.[5] We agree with the WCJ that Claimant did not carry his burden on this point.

Claimant's claim petition alleged that he sustained a "[c]losed head trauma resulting in a blood clot" as a result of a fall at work. R.R. 4a. At the WCJ hearing he claimed that his work-related injury was a "headache and neck pain" caused by striking his head on the roll of steel wire. N.T. 11; R.R. 34a. The WCJ specifically found that Claimant did not prove that he injured himself in the fall. The only testimony credited by the WCJ concerning the incident itself was the eyewitness testimony of Claimant's co-worker, Jorge Perez, who testified that Claimant did not strike his head when he fell.[6]

---

[5] On this point, *Krist v. Workmen's Compensation Appeal Board*, 422 A.2d 1220 (Pa. Cmwlth. 1980), on which the Board relied, is distinguishable. In *Krist*, the claimant suffered a fall at work for which there was no perceivable cause. However, unlike Claimant in the present case, the claimant in *Krist* actually sustained an injury in the nature of an aggravation of her pre-existing back condition, for which she underwent surgery.

[6] The WCJ has complete authority over questions of credibility, conflicting medical evidence and evidentiary weight. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383, 385 (Pa. Cmwlth. 1995).

Moreover, the EMS and hospital records did not record any sign of head trauma or indicate that Claimant suffered or was treated for a head injury. Instead, the health care providers were concerned that Claimant had suffered a heart attack, stroke or a seizure, although there was never a conclusive determination as to what caused Claimant to faint. The evidence supports the WCJ's finding that the treatment at issue was performed in order to determine the cause of the fainting episode, and not to treat any injury Claimant was alleged to have suffered as a result of the episode.

In its second issue, Employer argues that the Board erred in applying prior court decisions holding an employer liable for compensation benefits for medical tests required when the claimant was exposed to a risk of harm in the workplace. Relatedly, in its third issue, Employer contends that the Board erred in finding that Claimant suffered a compensable "risk of head injury" based upon reports from witnesses to Claimant's fall at work. We agree with Employer on both of its assertions.

Employer challenges the Board's reliance on *Jackson Township Volunteer Fire Co. v. Workmen's Compensation Appeal Board (Wallet)*, 594 A.2d 826 (Pa. Cmwlth. 1991). In that case, the claimant, a volunteer emergency responder, was exposed to the bodily fluids of an accident victim who was HIV-positive and infected with the hepatitis B virus. The claimant filed a claim petition seeking reimbursement for the medical costs he incurred for blood tests and immunizations. This Court rejected the employer's argument that the claimant did not suffer an "injury," holding that "persons exposed to a serious risk of contracting a disease which is commonly known to be highly contagious/infectious and potentially deadly, have been 'injured' for the purpose of receiving

10

compensation under the Act." *Id*. at 828. Citing *Jackson Township*, the Board noted that the claimant's injury in that case was the "risk of infection," and that the imposition of liability on the employer was reasonable based on the "seriousness and immediacy of the risk" and the "reasonableness of the services sought and rendered." Board Adjudication at 3. The Board concluded that Claimant's fall at work resulted in a risk of a head injury, for which he received precautionary treatment and testing pursuant to the directives of health care professionals. As such, the Board held that Employer was liable for the costs of that treatment.

Employer's reliance on *Jackson Township* is misplaced. To begin, this Court expressly limited its holding in that case to "persons exposed to a real and serious risk of contracting highly contagious/infectious and potentially deadly diseases." *Id*. at 829. Claimant is not such an individual. More importantly, as noted above, the medical personnel involved in Claimant's case treated him for a possible stroke or heart attack as they tried to determine why he fainted. They did not treat Claimant for a possible head injury.

Employer also argues that the Board erred in relying on *Lash v. Workmen's Compensation Appeal Board (Jablonski)*, 420 A.2d 1325 (Pa. 1980), to support its determination that Claimant was entitled to payment of his medical bills for an alleged "risk of harm." In *Lash*, the claimants were exposed to lead on a daily basis in their employer's factory, and medical tests indicated that they had begun to absorb lead into their bloodstreams at an abnormally high rate, making further lead exposure hazardous. The employer transferred them to lower-paying positions where they would not be exposed to lead. The Supreme Court held that the claimants were entitled to partial disability wage loss benefits because "[i]t would be barbaric to require an employee to continue in a position where he is

11

exposed to a toxic substance until he is so ill that he physically is incapable of performing his job." *Id*. at 1327.

We agree with Employer that *Lash* is inapposite. That holding was driven by the unique facts presented, *i.e.*, claimants who had become abnormally fast absorbers of lead after years of job-related exposure and who suffered a loss of earning power when they were transferred to safer positions. In the instant case, Claimant did not establish any work-related injury, let alone ongoing exposure to a workplace danger.

Finally, Employer argues that the Board erred in concluding that Claimant was treated for a "risk of head injury" based upon information the health care providers received from witnesses. We agree. None of the witnesses observed blood, bumps or bruises on Claimant's head. None of the EMS and hospital records reported a head injury or outward signs of head trauma. These medical records all indicate that Claimant was treated for a potential stroke. In short, the Board's determination that Claimant was treated for a risk of head injury is not supported by the record.

In summary, the fact that Claimant was transported to two hospitals and underwent diagnostic testing, resulting in substantial medical bills, does not, in the absence of a finding of a work-related injury, entitle Claimant to an award of workers' compensation benefits and payment of his medical bills by Employer. Regardless of the reason for his fall at work, Claimant failed to meet his burden of proving that he sustained an injury as a result of the incident. Accordingly, the WCJ properly denied and dismissed the claim petition, and the Board erred in reversing the WCJ's order.

_____
MARY HANNAH LEAVITT, President Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Insteel Industries,                     :
                    Petitioner          :
                                        :
          v.                            :   No:  1064 C.D. 2015
                                        :
Workers' Compensation                   :
Appeal Board (Litzenberger),            :
                    Respondent          :

# **O R D E R**

AND NOW, this 18th day of May, 2016, the order of the Workers' Compensation Appeal Board in the above-captioned matter, dated June 2, 2015, is REVERSED.

_____
MARY HANNAH LEAVITT, President Judge