538 A.2d 143

Borough of Norwood, Petitioner *v.* Workmen's Compensation Appeal Board (Wiker), Respondents.

Argued December 17, 1987, before Judges Mac-Phail and Barry, and Senior Judge Barbieri, sitting as a panel of three.

*Patrice A. Toland, Post & Schell, P.C.*, for petitioner.

*Leonard V. Tenaglia, Richard, DiSanti, Hamilton, Gallagher & Paul,* for respondent, Lawrence B. Wiker.

Opinion by Senior Judge Barbieri, March 1, 1988:

The Borough of Norwood (Employer) petitions for review of the order of the Workmen's Compensation

Appeal Board (Board) granting compensation to Lawrence B. Wiker (Claimant). We affirm.

Claimant worked as a police officer for Employer. On February 6, 1983, at 5:10 a.m. when Claimant and his family were sleeping in their home in Norwood, a sniper fired several bullets through Claimant's bathroom window at a time when Claimant would normally have been in the bathroom to prepare for his regular work shift for Employer.[1] After the incident, Claimant continued to work as a police officer but began experiencing burning sensations in his chest and stomach, stress, problems with sleeping, and general nervousness, all of which Claimant self-diagnosed as an ulcer for which he treated himself with antacids. On June 11, 1983, Claimant first sought medical treatment at Taylor Hospital for what was initially thought to be esophagitis, but later diagnosed as a heart attack. Claimant's pain persisted and on September 13, 1983, he was admitted to Crozier-Chester Medical Center for an angiography which disclosed hypokinesis of the left ventricle and a totally occluded right coronary artery. On September 21, 1983, he went on sick leave at Employer's insistence. On December 2, 1983, he was re-admitted for chest pains and referred to a psychiatrist. Following examination, this psychiatrist reported to Claimant on January 26, 1984, that Claimant was suffering from chronic post-traumatic stress disorder precipitated by the incident of February 6, 1983, and could no longer do police work. On February 2, 1984, Claimant's attorney notified Employer of the injury and the fact that it

---

[1] One Archibold E. Murdock was subsequently arrested for the incident and convicted of three counts of aggravated assault, three counts of simple assault, and one count of recklessly endangering another person (R.R. 6a). Prior to the incident, Murdock had been arrested by Claimant for disorderly conduct, been found guilty, and had threatened retaliation against Claimant (R.R. 11a).

was related to the February 6, 1983, incident. A petition for compensation was filed and the referee awarded Claimant compensation which the Board affirmed.

Employer contends that this claim is barred by the provisions of Section 311 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §631, in that Claimant failed to give notice to the Employer within 120 days after the occurrence of the injury. However, the second sentence of Section 311 clearly provides that, when the relationship of the injury to the employment is not known to the employee, the 120 day period does not begin to run until the employee either knows or should know of such relationship. *E.J.T. Construction, Inc. v. Workmen's Compensation Appeal Board (Larusso),* 47 Pa. Commonwealth Ct. 492, 408 A.2d 226 (1979). Employer presents a two pronged argument as to why the referee's finding that Claimant did not know that his disability was employment related until he was so advised by his psychiatrist on January 26, 1984, is in error. First, Employer points out that Claimant experienced pain in his chest and stomach immediately after the shooting incident and therefore should have known the nature of his injury. Secondly, Employer suggests that since Claimant was treated for coronary problems in September of 1983, the 120 day notice period should run from that date.

Employer confuses symptoms of the injury with the injury itself. The actual injury Claimant suffered was chronic post-traumatic stress disorder which was not diagnosed until January of 1984. The pain, burning sensations and coronary problems which Claimant experienced prior to this time are symptoms of this disorder as they are of a large number of other diseases and disorders. Employer fails to distinguish between cause and effect. We will not attribute psychiatric expertise to

the layman who knows only generally that something is wrong with him. This is not an obvious or commonplace injury apparent to the ordinary claimant. We note that Claimant's condition was in fact misdiagnosed by several physicians who referred Claimant to a .psychiatrist because they were unable to pinpoint the nature of his injury.

The cases that Employer cites all involve back injuries and are distinguishable. *See Truskey v. Workmen's Compensation Appeal Board (Atlas Powder Company)*, 56 Pa. Commonwealth Ct. 315, 424 A.2d 627 (1981); *Rawling v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 51 Pa. Commonwealth Ct. 385, 414 A.2d 447 (1980); *Workmen's Compensation Appeal Board v. Paris Neckwear Company*, 22 Pa. Commonwealth Ct. 543, 350 A.2d 212 (1976). When a claimant injures his or her back at work and continues to experience back pain, it is fairly obvious that the claimant should have known that the nature of his disability was a back injury. In the present case, there is simply no way that a claimant experiencing chest and stomach pains along with coronary problems could know he was suffering from a psychiatric injury in the nature of a post-traumatic stress disorder.

The referee also ordered Employer to pay the medical bills of Claimant's treating cardiologist in the amount of $783.00. Employer contends that since this cardiologist did not testify, Claimant has not proven the bills were causally related to the injury. Claimant's treating psychiatrist, who is a licensed Pennsylvania physician, referred to the cardiology treatment in relating Claimant's medical history and course of treatment relative to his injury. His testimony that Claimant's coronary problems were precipitated by the post-traumatic stress disorder constitutes substantial evidence to establish a causal relationship for these medical bills. However,

Claimant concedes in his brief that a $250.00 bill from the cardiologist was for a conference and not treatment and should not have been awarded as a medical expense. Consequently, we will affirm the Board's decision with reduction of the amount of medical expenses by $250.00.

ORDER

Now, March 1, 1988, the order of the Workmen's Compensation Appeal Board at No. A-91331, dated February 12, 1987, is affirmed except that the award of medical expenses is hereby reduced by $250.00.