# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Lower Burrell,      :
     :
          Petitioner    :
     :
         v.        : No. 120 C.D. 2019
     : Argued: February 13, 2020
Workers' Compensation Appeal    :
Board (Babinsack),      :
     :
        Respondent : 

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                         FILED: March 12, 2020

The City of Lower Burrell (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed an order of Workers' Compensation Judge (WCJ) David Torrey granting Thomas Babinsack (Claimant) total disability benefits for a psychological injury in the nature of post-traumatic stress disorder (PTSD). The PTSD resulted from an abnormal work event that aggravated a preexisting panic disorder and latent trauma. Employer contends the WCJ erred in concluding that Claimant provided timely and sufficient notice that his PTSD was work-related. Employer further asserts Claimant's psychologist's testimony regarding the causal relationship between Claimant's emotional condition and his employment was equivocal. In addition, Employer argues the WCJ's finding

that Claimant's emotional condition was impacted by the death of a fellow officer was not supported by substantial evidence. Upon review, we affirm.

## I. Background
### A. Evidence

In 2003, Claimant began working for Employer as a police officer. In January 2014, Claimant filed a claim petition alleging work injuries in the nature of PTSD and heart problems. Claimant sought total disability benefits. Employer filed a timely answer denying Claimant's material allegations.

Thereafter, the WCJ convened hearings. Claimant testified that prior to his current employment, he had no preexisting problems with his mental or cardiac health. In 2009, while serving as a volunteer firefighter, Claimant witnessed a female victim burn to death in a house fire. On January 23, 2011, while attending a fire as a police officer, Claimant went to the aid of a woman still in the kitchen of a burning house. During this incident, Claimant experienced an acute onset of angina, which lasted 10 to 15 minutes. Two days later, while exerting himself in a night-time search for a suspect, Claimant again suffered an episode of angina.

In February 2011, while on vacation in Florida, Claimant experienced repeated episodes of angina. Medical care providers at the scene suggested that he go to a hospital. The hospital doctors found that Claimant suffered from a massive occlusion of the left anterior descending (LAD) artery. During his treatment in Florida, Claimant's doctors inserted stents into the LAD artery.

Also while in Florida, Claimant notified Employer in early February 2011 of his angina attack during the house fire on January 23, 2011, and that he intended to seek compensation benefits under the Act commonly known as the Heart

2

and Lung Act.[1]  On February 24, 2011, Employer issued a notice of compensation denial (NCD).

Claimant was scheduled to return to work on February 16, 2011, but he suffered a panic attack while attending a grievance hearing.  He eventually returned to work on February 28, 2011.

However, Claimant continued to have panic attacks triggered by stress. In response to Claimant's continued anxiety, his family physician, Dr. Michael J. Govi (Family Physician), directed him to seek psychological care.  Claimant began seeing Dr. Michael Greenwald (Psychologist).

In October 2011, Claimant was called to the scene of a shooting where a fellow officer was shot and killed while approaching a wanted suspect.  Claimant considered the slain officer, Derek Kotecki (Kotecki), to be both a coworker and a friend.  When Claimant arrived at the scene, he witnessed Kotecki's bloodied body. Employer gave all of its officers 10 days off following the shooting.

Thereafter, Claimant tried to continue working, but was forced to retire on November 8, 2012, after the parties agreed that he suffered from PTSD, which rendered him unfit for duty as a police officer.  At that time, Claimant applied for a disability pension.

In support of his claim petition, Claimant presented deposition testimony from Family Physician.  In April 2011, Family Physician began treating Claimant for insomnia and anxiety.  Family Physician stated Claimant developed anxiety after his hospital procedure in Florida.  If Claimant experienced physical symptoms, he became concerned about a recurrence of his heart problem or coronary

---

[1] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§637-38.

disease. Family Physician tended to think Claimant suffered from PTSD, related to the death of the fire victim in 2009 and to Kotecki's death in 2011.

Claimant also presented the deposition testimony of Psychologist. Claimant began treating with Psychologist in February 2011 for panic attacks. Psychologist initially diagnosed Claimant with a panic disorder. Psychologist attributed Claimant's disorder to concerns about his heart after suffering a heart attack and undergoing surgery. Psychologist testified that Claimant suffered from anxiety and depression.

Psychologist further testified that Claimant, over time, developed PTSD, which was caused by various stressful events during his employment, including the death of his friend and fellow officer in October 2011. In particular, Psychologist opined that Claimant's PTSD became fully evident after Kotecki's death. At that time, Claimant began experiencing symptoms of acute stress, chest pains and signs of avoidance.

Employer presented the testimony of its police chief, Timothy Weitzel (Police Chief). He testified regarding Kotecki's death. The officer was shot three times while approaching a vehicle. The entire police department responded to the scene. After the shooting, the entire department received administrative leave. Police Chief further testified that Kotecki's shooting was the only time in the city's history that a police officer was shot and killed in the line of duty.

Employer also presented the deposition testimony of Dr. Jeffrey S. Garrett (IME Physician), who performed an independent medical examination (IME) of Claimant in April 2012 related to Claimant's Heart and Lung Act claim. IME Physician is board certified in cardiovascular diseases and internal medicine. He diagnosed Claimant with serious, premature coronary artery disease, idiopathic

4

(of unknown origin) in nature. IME Physician rejected the proposition that Claimant's coronary artery disease was causally related to his work as a police officer.

However, IME Physician testified that Claimant's episode of angina on January 23, 2011, when responding to a fire, may have been related to work-related stress. In other words, Claimant's angina became symptomatic because of his work activities on that date.

IME Physician also testified that Claimant informed him that he received a diagnosis of PTSD. Because Claimant had a PTSD diagnosis, IME Physician noted in his report that he would defer to a mental health professional as to whether Claimant had a psychiatric diagnosis that might influence his ability to perform his duties as a police officer. Nevertheless, IME Physician did not find Claimant incapable of performing his full duties as a police officer based on his cardiac condition.

Based on IME Physician's report that Claimant was treating for PTSD, Employer sent Claimant to its own psychologist, Dr. Samuel K. Schachner, who evaluated Claimant over a series of appointments. Dr. Schachner ultimately opined that Claimant suffered from PTSD and was unfit for work. Claimant agreed with Dr. Schachner's assessment. After reviewing Dr. Schachner's reports,[2] Employer advised Claimant at a meeting in October 2012 that he could not continue to work as a police officer. Employer offered him the option of applying for a disability pension in lieu of termination. By letter dated November 8, 2012, Claimant confirmed his choice to pursue a disability pension.

---

[2] Dr. Schachner's reports were not submitted into evidence.

5

With respect to Claimant's evidence, the WCJ accepted as credible Claimant's testimony regarding the effects of the incidents at work, especially Kotecki's death. In particular, the WCJ noted Claimant's unshakeable demeanor and found all of Claimant's representations to be believable.

The WCJ also credited the testimony of Psychologist. Initially, Psychologist diagnosed Claimant with a panic disorder caused by his worries about his heart. However, Psychologist ultimately diagnosed Claimant with PTSD in addition to the panic disorder. Psychologist further testified that he had no doubt that Claimant developed PTSD as a result of his work experiences. Although Claimant had a panic disorder after the stenting procedure in the hospital, he got to the point of having diagnosable PTSD after Kotecki's death. Before that event, Psychologist did not believe that Claimant really met all the criteria for PTSD.

## B. WCJ's Findings of Fact

The WCJ found that on January 23, 2011, Claimant sustained a work injury in the nature of exertion-induced angina (chest pain). First WCJ Op., 8/21/15, Finding of Fact (F.F.) No. 26. This episode of angina lasted about 15 minutes. *Id.* Claimant experienced another work-induced episode of angina two days later. *Id.* These episodes, however, did not cause permanent damage to Claimant's heart and resolved when he sat down and rested. *Id.* In making these findings, the WCJ credited the testimony of Claimant and IME Physician. *Id.* Claimant did not sustain any physical work injuries beyond the two 15-minute episodes of disabling pain. *Id.*, F.F. No. 27.

Because of his continuing angina, the discovery of coronary artery disease, and his worries over these conditions, Claimant developed a panic disorder.

*Id.*, F.F. No. 28. The WCJ based this finding on the testimony of Family Physician and Psychologist; the WCJ noted they were not contradicted by any other experts. *Id.*

In 2009, while working as a volunteer firefighter for the City of Tarentum Volunteer Fire Company, Claimant witnessed the death of a woman in a fire. *Id.*, F.F. No. 29. This event highly traumatized Claimant, and he received counseling. *Id.* However, Claimant began having nightmares, guilt, hyper-emotionality, behavioral avoidance, recalling images of the event, and feeling guilty as a result of not being able to save the woman. *Id.* This not only affected Claimant at the time, but the distress and its effects became latent. *Id.* In making this finding, the WCJ credited the testimony of Claimant and Psychologist. *Id.*

The WCJ thus found that Claimant had preexisting conditions of a latent traumatic episode and a panic disorder brought on by anxiety after the hospital stenting procedure. *Id.*, F.F. No. 30. Claimant feared he would exert himself at work and die. *Id.*

The WCJ further found the evidence established that Claimant developed PTSD as a result of these events and Kotecki's death. *Id.*, F.F. No. 31. Kotecki's death, arising in the course of Claimant's employment, served as a "tipping point" precipitating Claimant's PTSD. *Id.* The WCJ noted Police Chief's testimony that Kotecki's shooting death in the line of duty was the only one in Employer's history. *Id.*, F.F. No. 3. Thus, the WCJ found that witnessing Kotecki's bloodied body was a highly unusual and singular event for Claimant in the course of his employment with Employer. *Id.*, F.F. No. 32.

In finding that Claimant sustained a work injury in the nature of PTSD, the WCJ specifically found that Claimant suffered an aggravation as a result of the "tipping point" event of Kotecki's death, superimposed upon Claimant's preexisting

7

conditions of a panic attack disorder and the latent trauma of the 2009 fire victim death. *Id.*, F.F. No. 33. In making this finding, the WCJ credited Psychologist's opinion. *Id.* The WCJ noted Psychologist's outstanding academic and practice credentials. *Id.* Psychologist treated Claimant and analyzed his case for years. *Id.* Also, Psychologist explained the basis for his opinion; he was not conclusory. *Id.* In sum, the WCJ determined that overall, Psychologist's testimony constituted an unequivocal opinion substantiating causation. *Id.*

## C. WCJ's Conclusions of Law & Order

Based on his findings, the WCJ determined that Claimant met his burden of proof in his claim petition. First WCJ Op., Conclusion of Law (C.L.) No. 2. With regard to the two episodes of angina in the course of employment in January 2011, the WCJ recognized an injury of work-induced angina. *Id.*, C.L. Nos. 2, 3. However, Claimant was not entitled to disability or medical benefits for these injuries. *Id.*, C.L. Nos. 2, 3. The WCJ further concluded that Claimant's health worries over the possibility of recurrent episodes of angina or other cardiac problems on the job did not constitute a work injury. *Id.*, C.L. No. 4.

Nevertheless, the WCJ determined that Claimant met the burden of proof required to demonstrate a mental stress/mental disability injury aggravating his preexisting conditions. First WCJ Op., C.L. No. 5. Claimant's preexisting conditions included latent trauma of the 2009 fire victim's death, and non-work-related health worry over recurrent episodes of angina and cardiac problems. *Id.* However, Claimant demonstrated that his exposure to Kotecki's bloodied and dead body on October 12, 2011, constituted a highly unusual and singular event of stress that acted as a tipping point aggravating his preexisting conditions of panic disorder

8

and latent trauma to PTSD. *Id.* (citing *Payes v. Workers' Compensation Appeal Board (Pennsylvania State Police)*, 79 A.3d 543 (Pa. 2013); *PA Liquor Control Board v. Workers' Compensation Appeal Board (Kochanowicz)*, 108 A.3d 922 (Pa. Cmwlth. 2014)). The WCJ noted that a mental stress causing a mental disability injury may be awarded when the work-related stressor superimposes itself on non-work-related, preexisting conditions. *Id.*, C.L. No. 6 (citing *RAG (Cyprus) Emerald Resources, L.P. v. Workers' Compensation Appeal Board (Hopton)*, 912 A.2d 1278 (Pa. 2007)).

Accordingly, the WCJ determined that Claimant was totally disabled by PTSD from November 12, 2012, to the present. First WCJ Op., C.L. No. 7. The WCJ noted that under the Workers' Compensation Act[3] (Act), an employer takes an employee as he comes. *Id.*, C.L. No. 12 (citing *RAG*). This rule applies in both the physical injury and mental injury realms. *Id.* Therefore, workers who suffer from preexisting mental conditions are not treated differently from workers with preexisting physical injuries. *Id.* The WCJ further stated that in a mental stress-mental disability case, a claimant must show abnormal working conditions. *Id.*, C.L. No. 15 (citing *Payes*; *PA Liquor Control Bd.*) Here, Claimant met this burden by showing that his exposure to Kotecki's bloodied and dead body was a highly unusual and singular event. *Id.*

The WCJ also determined that Claimant provided Employer prompt and effective notice of injury. First WCJ Op., C.L. No. 10. The WCJ noted that Employer never denied that Claimant provided notice or raised a notice defense. *Id.*

In his order, the WCJ granted Claimant's claim petition and awarded Claimant total disability benefits for aggravation by mental stress of preexisting non-

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

9

work-related conditions, manifesting in PTSD. First WCJ Op., Order, 8/21/15. The WCJ directed Employer to pay Claimant total disability benefits from November 18, 2012, to the present and continuing until Employer establishes Claimant's condition changed. *Id.* The WCJ also awarded Claimant payment for his mental health treatment commencing on October 12, 2011, the date of Kotecki's death. *Id.*

## D. Board's Decision to Remand on Notice Issue

In November 2016, the Board issued an opinion remanding the case to the WCJ. In its decision, the Board determined that the WCJ failed to adequately address the issue of notice. Consequently, the Board directed the WCJ to make additional findings based on the existing record and to reconsider whether Claimant provided Employer timely notice of his work injury. The Board did not address Employer's appeal of the merits of the claim petition.

## E. WCJ's Decision on Remand

In November 2017, the WCJ issued a decision on remand. In his decision, the WCJ noted that the parties agreed to compromise and settle the case. Second WCJ Op., 11/6/17, F.F. No. 8. At a June 2017 hearing, Claimant accepted the sum of $105,000 in exchange for a final release. *Id.* Nevertheless, the parties requested that the WCJ decide the remand. *Id.* Ultimately, the WCJ found that Employer had notice of injury as of February 24, 2011, the date it issued an NCD to Claimant relative to Claimant's complaint of angina occurring in January 2011. *Id.*, F.F. No. 10.

10

Accordingly, the WCJ determined that Claimant met his burden of proof required under Section 311 of the Act, 77 P.S. §631, to communicate sufficient notice of a work injury to Employer. Second WCJ Op., C.L. No. 2. The WCJ again noted that Employer issued an NCD relative to Claimant's episode of work-induced angina, which occurred on January 23, 2011. *Id.* In explaining his determination, the WCJ noted that notice of the original occurrence of the injury is effective to cover all compensable consequences which are a natural and probable result of the original trauma. *Id.,* C.L. No. 3 (citing *Crown Services, Inc. v. Workmen's Compensation Appeal Board (Beck)*, 682 A.2d 1333 (Pa. Cmwlth. 1996), *aff'd*, 701 A.2d 221 (Pa. 1997)). In particular, the WCJ reasoned that although Claimant's initial injury was a physical injury, Employer observed Claimant struggling with mental problems thereafter. *Id.*, C.L. No. 4. In short, Employer knew of the genesis of Claimant's injury and had every opportunity to investigate it. *Id.* In support of his finding, the WCJ cited *Katz v. Evening Bulletin*, 403 A.2d 518 (Pa. 1979). There, our Supreme Court, in interpreting the notice provisions in the Act, recognized that the issue of whether notice was given is a question of fact. As such, the facts found by a fact-finder (now a WCJ), are binding on reviewing courts. *Katz*, 403 A.2d at 520. Moreover, the Supreme Court reasoned that a meritorious claim should not, if possible, be defeated based on technicalities in less than "letter perfect" notice. *Id.* The WCJ also noted that the Act, including the notice provisions, must be liberally construed in furtherance of its humanitarian purposes. Second WCJ Op., C.L. No. 5 (citing *Zwick v. Workers' Compensation Appeal Board (Popchocoj)*, 106 A.3d 251 (Pa. Cmwlth. 2014)).

After reconsidering the notice issue, studying the existing record and reviewing the law, the WCJ once again determined that Claimant provided effective

11

notice to Employer. Second WCJ Op., C.L. No. 6. Therefore, the WCJ reconfirmed the August 2015 award of benefits. *Id.*, Order, 11/6/17.

## F. Board's Final Decision

Employer again appealed. In January 2019, the Board issued a decision affirming the WCJ's order granting Claimant's claim petition. With respect to timely notice, the Board observed that the issue of whether a claimant provided proper notice of injury under Section 311 of the Act is a question of fact for the WCJ. *See Gentex Corp. v. Workers' Compensation Appeal Board (Morack)*, 23 A.3d 528, 534 (Pa. 2011).

Here, the Board recognized that Employer did not dispute that, in February 2011, Claimant provided timely notice of a physical injury occurring the month before. However, Employer did dispute whether the notice covered Claimant's subsequent psychological injury that occurred in October 2011. Citing *Crown Services*, the Board agreed with the WCJ's determination that Claimant's PTSD was reasonably associated with his original episode of work-induced angina and later medical conditions stemming from that injury. *See* Bd. Op., 1/9/19, at 6. To that end, Employer observed Claimant's struggle with mental problems following the initial work incident and culminating with Claimant witnessing Kotecki's dead body in October 2011. *Id.* Consequently, the Board determined Claimant's February 2011 notice was sufficient to cover Claimant's medical problems arising in October 2011. *Id.*

With respect to the merits of Claimant's claim petition, the Board agreed with the WCJ's determination that Claimant's psychological injury should be classified as a "mental-mental" injury requiring proof that it was caused by

12

abnormal working conditions. *See Gulick v. Workers' Compensation Appeal Board (Pepsi Cola Operating Co.)*, 711 A.2d 585, 589 (Pa. Cmwlth. 1998) (an examination of abnormal working conditions must focus on a particular incident to determine whether that incident was a highly unusual and singular event).

Citing *Payes*, the Board noted that this standard applies even where the claimant is employed in a stressful or dangerous position such as a police officer. In *Payes*, a state police officer struck and killed a woman who ran in front of his patrol car. The Supreme Court determined that the incident was so extraordinarily unusual and distressing as to constitute an abnormal working condition, even considering the general expectation that a police officer would experience stressful events.

Here, the Board noted, Claimant observed the bloodied and dead body of a friend and fellow officer who was shot and killed in the line of duty. No police officer had been shot and killed in the line of duty in the city's history. Noting these facts, the Board agreed with the WCJ that these events were so extraordinarily unusual and distressing as to constitute an abnormal working condition under *Payes*. Accordingly, the Board affirmed the WCJ's award. Employer petitions for review.[4]

## II. Discussion
### A. Timely Notice
#### 1. Contentions

Employer first contends that the WCJ erred in determining that Claimant provided timely and effective notice of his psychological injury. In order for a claimant to be eligible for compensation, he must provide notice of injury to his employer within 120 days of the injury. Section 311 of the Act, 77 P.S. §631;

---

[4] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Phoenixville Hospital v. Workers' Compensation Appeal Board (Shoap)*, 81 A.3d 830 (Pa. 2013).

13

*Gentex*, 23 A.3d at 534. In cases where the connection between an employee's injury and his employment is not clear, the notice period does not begin to run until the employee knows or should have known, by the exercise of due diligence, of the existence of his injury and its possible relationship to his employment. Section 311 of the Act, 77 P.S. §631; *Borough of Norwood v. Workmen's Compensation Appeal Board (Wiker)*, 538 A.2d 143 (Pa. Cmwlth. 1988).

Here, Employer asserts, Claimant notified it by a February 2011 letter that he suffered injuries to his heart during the course of his employment in January 2011. Claimant's letter made no reference to any mental condition or disability as a result of these incidents. Employer maintains it did not become aware that Claimant suffered from PTSD until it received IME Physician's April 2012 report. Also, IME Physician's report only mentioned that Claimant was being treated for PTSD; the report did not indicate causation.

Employer further contends Claimant never testified as to when he provided notice that his psychological disability was work-related. Employer maintains that the earliest it could have inferred that Claimant's disability was related to his employment was a meeting on October 19, 2012. Claimant testified that, at the meeting, Employer offered him the option of applying for a pension based on an occupational disability in lieu of being terminated. Employer claims that no earlier date is supported by the evidence. Thus, Employer argues that any notice it received regarding Claimant's PTSD occurred well after the October 2011 date that Claimant allegedly developed PTSD after witnessing Kotecki's bloodied body.

Essentially, Employer challenges the WCJ's "cascade of events" theory (*see* Second WCJ Op., C.L. No. 2), on several grounds. In particular, Employer contests the WCJ's determination that Claimant's notice of his cardiac condition in

14

February 2011, coupled with Employer's knowledge of Claimant's psychological issues immediately thereafter, put Employer on notice that Claimant had a serious condition. First, Employer disputes the WCJ's reliance on the fact that a witness for Employer saw Claimant have a panic attack and collapse at a grievance hearing in February 2011. *See* Second WCJ Op., C.L. No. 4. Employer asserts the mere fact that a supervisor watched a subordinate collapse at his desk and then be transported to a hospital by paramedics does not, by any reasonable means, charge the supervisor with notice of the medical diagnosis or whether the diagnosis was work-related.

In support of its position, Employer cites *State Workmen's Insurance Fund v. Workmen's Compensation Appeal Board (Wagner)*, 677 A.2d 892 (Pa. Cmwlth. 1996), where we reasoned that although notice under the Act does not require an exact diagnosis, the notice must include a reasonably precise description of the injury and indicate that it was work-related. Employer asserts that under the WCJ's reasoning, an employer is put on notice merely by a supervisor's observations. Employer argues that the WCJ's conclusion is contrary to the law.

Second, Employer contends the union grievance episode, which occurred in February 2011, cannot support a determination that Employer had notice of Claimant's PTSD, which occurred eight months later when Kotecki died. Therefore, Employer asserts, the WCJ imputed knowledge of a disabling injury before it occurred.

Employer also emphasizes that the WCJ did not cite any legal authority for his cascade of events theory. Rather, the WCJ justified his notice determination by trying to connect emotional residuals related to Claimant's transient angina episodes to an emotional disability occurring 10 months later. Employer points out that Claimant never challenged the denial of his claim for benefits based on his

15

cardiac condition. Employer also noted the WCJ's determinations that Claimant's angina episodes and associated health worries were not compensable. Based on those determinations, Employer argues that the WCJ's cascade of events theory is illogical and unreasonable.

Further, Employer contends our decision in *Crown Services*, upon which the WCJ relied, is factually distinguishable from the unique situation in the present case. In *Crown Services*, the claimant sustained a work injury when a machine injured her three fingers. Thereafter, the claimant filed a claim petition alleging a lower back injury as a result of the work injury. The WCJ in *Crown Services* determined that the back injury resulted from the work injury and determined that notice of the injury to the claimant's fingers was sufficient to cover all manifestations of the injury. 682 A.2d at 1339.

Here, Employer asserts, the WCJ found two injuries: a physical injury diagnosed as cardiac in nature, and a mental injury diagnosed as PTSD. Claimant's cardiac injuries occurred in January 2011. Claimant's PTSD developed after Kotecki's death in October 2011. Employer therefore argues this case, unlike *Crown Services*, involves separate injuries with separate natures occurring on separate dates. Thus, Employer maintains that *Crown Services* cannot possibly be stretched to impute notice to an employer aware of a physical injury that a mental injury manifesting 10 months later was caused by a specific incident. Consequently, Employer contends the WCJ erred in holding that Claimant provided timely notice of his mental injury manifesting in October 2011.

16

## 2. Analysis

Under the Act, notice is a prerequisite to receiving workers' compensation benefits. *Gentex*, 23 A.3d at 534. The claimant has the burden of demonstrating he gave proper notice to his employer. *Id.* Section 311 of the Act requires an employee to provide notice to his employer within 120 days from the date of the injury, or from the date the employee learns the injury is work-related. 77 P.S. §631. Section 312 of the Act requires that the notice inform the employer that a certain employee received an injury, described in ordinary language, during the course of his employment, on or about a specified time, and at or near a specified place. 77 P.S. §632. However, "the parameters of what constitutes adequate notice in a given case has been developed through [case law]." *Gentex*, 23 A.3d at 534.

Further, the question of whether an employee provided adequate notice of his work injury is a mixed question of law and fact. *Gentex*, 23 A.3d at 534. The more fact-intensive the inquiry, the more deference a reviewing court should give to the findings of fact. *Id.* The Supreme Court also noted that in construing the Act, a reviewing court must be mindful that "the Act was intended to benefit the injured employee, and, therefore, must be construed liberally in the employee's favor in order to effectuate its humanitarian objectives." *Id.* at 534. "As such, borderline interpretations are to be decided in favor of the claimant." *Id.*

As we recognized in *Crown Services*, the term "injury"[5] as defined in Section 301(c)(1) of the Act, 77 P.S. §411(1), "includes any medical malady reasonably associated with the work place incident or injury, as well as any

---

[5] Section 301(c)(1) of the Act defines an "injury" in part as "an injury to an employe[e], regardless of his previous physical condition … arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury …." 77 P.S. §411(1).

17

subsequent causally related medical problems stemming from that injury." *Crown Services*, 682 A.2d at 1339. Here, the WCJ determined Claimant sustained a work-related injury in the nature of work-induced angina (chest pain) on January 23, 2011. First WCJ Op., F.F. No. 26. Claimant suffered another episode of work-induced angina on January 25, 2011. *Id.* In his remand decision, the WCJ determined that these angina episodes "set in play a cascade of events" culminating in Claimant's development of PTSD on or about October 12, 2011. Second WCJ Op., C.L. No. 2.

In light of the particular circumstances, our decision in *Gulick* is instructive here. In *Gulick*, the claimant sustained a "lumbar strain" injury while working as a delivery driver, and the employer issued a notice of compensation payable. Thereafter, the employer filed a termination petition alleging the claimant fully recovered and could return to work without restriction. 711 A.2d at 586. The claimant, who suffered from preexisting schizophrenia, was hospitalized with anxiety over the fear his benefits would be terminated. *Id.* Although the claimant's employment did not cause his schizophrenia, his medical expert testified that the instability and uncertainty brought on by the termination action significantly worsened his mental disorder. *Id.* at 586-87. Therefore, we determined the claimant's disability needed to be established under the mental-mental standard of an abnormal working condition. *Id.* at 589.

In making this determination in *Gulick*, we applied our Supreme Court's rationale in *Ryan v. Workman's [sic] Compensation Appeal Board (Community Health Services)*, 707 A.2d 1130 (Pa. 1998). In *Ryan*, the claimant, a visiting nurse who sustained physical injuries in a work-related automobile accident, suffered a psychological injury when the other driver sued her. The Supreme Court noted that, without the accident, there would not have been the lawsuit to trigger or

stimulate the psychological injury. *Id.* at 1135. Ultimately, the Court reasoned that the psychological stimulus of learning that she was being sued as a result of the work-related accident, rather than the physical injuries sustained in the accident, caused the claimant's psychological injury. *Id.* The Court determined the claimant's injury should have been classified as mental-mental for workers' compensation purposes. *Id.*

Similar to the accident in *Ryan*, Claimant's work-related angina episodes began the series of events culminating in his psychological injury in the nature of PTSD. As the WCJ noted, Claimant developed a panic attack disorder related to his health worries over his cardiac condition. First WCJ Op., F.F. Nos. 19, 33. On February 1, 2011, Claimant first notified Employer of his episodes of angina and his cardiac condition. *See* Notes of Testimony (N.T.), 5/16/14, at 23; Reproduced Record (R.R.) at 40a. Also, on February 16, 2011, Claimant suffered a panic attack in the presence of his supervisor and coworkers at a union grievance meeting. N.T. at 24; R.R. at 41a. An ambulance transported Claimant from work to a hospital. *Id.* Claimant remained hospitalized for two days. *Id.*

Psychologist testified that he started treating Claimant for anxiety and panic attacks in February 2011. First WCJ Op., F.F. No. 19; Dep. of Michael Greenwald, Ph.D. (Greenwald Dep.), 8/22/14, at 7; R.R. at 215a. Psychologist stated that as a result of Claimant's work incidents, combined with the 2009 fire where he witnessed a woman burn to death, Claimant developed an increasing vulnerability to the onset of PTSD. First WCJ Op., F.F. No. 19; Greenwald Dep. at 14-17; R.R. at 222a-25a. Following Kotecki's death in October 2011, Claimant not only had similar chest pain, he also had symptoms of acute stress and began to show signs of avoidance. First WCJ Op., F.F. No. 19; Greenwald Dep. at 17; R.R. at 225a.

19

Claimant described memories of nightmares of coming into harm and memories of the woman burning. First WCJ Op., F.F. No. 19; Greenwald Dep. At 15; R.R. at 223a. At this point, Claimant met the criteria for PTSD. First WCJ Op., F.F. No. 19; Greenwald Dep. at 17; R.R. at 225a.

The WCJ found Psychologist credibly testified that Claimant suffered an aggravation of preexisting conditions when his PTSD manifested as a result of Kotecki's death. First WCJ Op., F.F. No. 33. Psychologist explained that Kotecki's death, superimposed upon Claimant's preexisting conditions, including a panic attack disorder and the latent trauma of the 2009 death of a fire victim, acted as a "tipping point" in causing Claimant's PTSD. *Id.*

Consequently, following Claimant's written notice of his cardiac condition, and his panic attack at a grievance hearing, which resulted in an ambulance transporting Claimant from work to a hospital, Employer had sufficient notice in 2011 that Claimant was struggling with mental problems following the work incidents in January and February 2011. Second WCJ Op., C.L. Nos. 2, 4. As we noted above, the term "injury" as defined by the Act includes not only any medical condition reasonably associated with the work incident or injury, but also *"any subsequent causally related medical problems stemming from that injury." Crown Services*, 682 A.2d at 1339 (emphasis added).

Thus, in light of Psychologist's testimony and the WCJ's findings, we reject Employer's contention that Claimant's onset of work-related PTSD in October 2011 arose from a separate and distinct cause unrelated to his cardiac and panic attack episodes in January and February 2011. Rather, as the WCJ determined, the work-induced angina episodes and Claimant's panic attack at a union grievance hearing put Employer on notice that Claimant suffered from a serious condition.

Second WCJ Op., C.L. No. 4.  Therefore, Employer had effective notice of the genesis of Claimant's work injury and sufficient opportunity to investigate Claimant's deteriorating mental condition related to the onset of his cardiac problems.  *See Crown Services*; *Borough of Norwood*.

As to the details of Claimant's notice letter, this Court recognizes that PTSD "is not an obvious or common place injury apparent to the ordinary claimant." *Borough of Norwood*, 538 A.2d at 145.  Symptoms of PTSD are also symptoms of a large number of other disorders.  *Id.*  Thus, in *Borough of Norwood*, we reasoned that we cannot attribute psychiatric expertise to a layman who knows only that something is wrong with him.  *Id.*

As discussed above, where a notice inquiry is heavily weighted toward issues of fact rather than issues of law, the WCJ's determinations regarding adequate notice must be afforded significant deference.  *Gentex*, 23 A.3d at 534.  Moreover, as our Supreme Court instructed, borderline interpretations of the required notice are to be decided in favor of the claimant.  *Id.* at 533.  In accord with our decision in *Crown Services*, wherein we reasoned that a work injury includes all subsequently diagnosed conditions causally related to it, we discern no error in the WCJ's determination.  Claimant's initial notice and panic attack in February 2011 provided Employer with sufficient notice of injury to cover his later psychological injury stemming from his original work injury.

### B. Competency of Claimant's Expert Evidence
### 1. Contentions

Employer next contends that Psychologist's causation opinion was equivocal as to the cause of Claimant's PTSD.  Employer points out that the WCJ framed the central issue in the case as whether Kotecki's death was a material

21

contributing factor in aggravating Claimant's preexisting conditions resulting in a diagnosis of PTSD in October 2011. First WCJ Op., F.F. No. 8. The WCJ found Claimant suffered a traumatizing episode when Employer summoned him to the scene of Kotecki's fatal shooting, where he witnessed his colleague's bloodied body on the ground. *Id.* Citing the Supreme Court's decision in *RAG*, the WCJ stated that in a mental-mental case, work stress that aggravates a preexisting condition can be an injury under the Act. *Id.* The WCJ also observed that all parties in the case acknowledge that Claimant has PTSD. *Id.* Indeed, the WCJ found that Employer terminated Claimant's employment because he suffered from PTSD. *Id.*

Employer also cites Finding of Fact No. 31, wherein the WCJ found that Claimant developed a PTSD reaction to the fire victim's death in 2009 only after he experienced adverse threatening events at work and his cardiac illness. The WCJ specifically found that a "material factor, that is the 'tipping point' was reached when Claimant experienced [Kotecki's death], an event arising in the course of [Claimant's] employment and related thereto." First WCJ Op., F.F. No. 31. The WCJ also specifically credited Claimant's statement that "the episode with [Kotecki] was particularly aggravating to him, as he was already in an anxiety-ridden and panicked condition for nine months." *Id.*

Employer raises two challenges to these determinations. First, Employer contends Psychologist's testimony was equivocal and does not support the WCJ's "tipping point" analysis. Second, Employer asserts Claimant never testified that the Kotecki incident was particularly aggravating to him, and that Psychologist's notes do not suggest that Claimant's emotional health was impacted by that incident.

Regarding Psychologist's testimony, Employer cites Finding of Fact No. 33, where the WCJ acknowledges that Psychologist appeared to be equivocal as

22

to when Claimant's PTSD actually manifested. Nonetheless, the WCJ further found that overall, Psychologist's testimony unequivocally established substantiating work causation for Claimant's PTSD. First WCJ Op., F.F. No. 33. Employer, however, maintains that Psychologist's opinion as to causation was just as equivocal as his opinion as to when Claimant's PTSD developed.

Psychologist originally diagnosed Claimant with a panic attack disorder in February 2011. Sometime between February 2011 and November 2012, Psychologist's diagnosis evolved to PTSD. Employer further asserts Psychologist referenced multiple traumatic and upsetting experiences, several of which did not occur in the course of Claimant's employment. However, Employer claims Psychologist did not specifically state an opinion that Kotecki's death triggered Claimant's PTSD.

Employer argues the WCJ erred in relying on *Halaski v. Hilton Hotel*, 409 A.2d 367 (Pa. 1979), for the proposition that when causation is unequivocally established, the fact that the expert cannot pinpoint the pathology or date thereof should not defeat a worker's claim. In *Halaski*, the medical testimony established that the disability flowed from one of two compensable injuries. In other words, either injury would be compensable.

Here, Employer contends that Psychologist failed to specifically link Claimant's development of PTSD to one specific event. Rather, Psychologist identified multiple events that contributed to the PTSD, including events that did not occur in the course of Claimant's employment. Employer therefore argues that Psychologist's failure to unequivocally link Claimant's PTSD to only work-related compensable injuries effectively nullifies causation.

23

Summarizing, Employer asserts that the mere possibility that a work-related incident contributed to the development of Claimant's PTSD fails to establish the required nexus between a work-related injury and a resulting disability necessary for an award of compensation. Therefore, in light of Psychologist's allegedly equivocal testimony regarding causation, and the lack of psychological notes evidencing a direct correlation between any one event and Claimant's PTSD, Employer argues that the WCJ's determination regarding causation lacks the necessary evidentiary support. Employer thus maintains that the WCJ's award of benefits must be reversed.

## 2. Analysis

The WCJ credited Psychologist's opinions. First WCJ Op., F.F. Nos. 29, 33. In particular, the WCJ noted Psychologist's outstanding academic and practice credentials. *Id.*, F.F. No. 33. Psychologist treated and analyzed Claimant's case for years. *Id.* The WCJ found that Psychologist explained the basis for his opinions and was not merely conclusory. *Id.* As the sole fact-finder in workers' compensation cases, the WCJ has exclusive province over issues of credibility and evidentiary weight. *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233 (Pa. Cmwlth. 2013). The WCJ may accept or reject the testimony of any witness, including an expert witness, in whole or in part. *Id.* In addition, we are bound by the WCJ's credibility determinations. *Id.*

Further, it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made. *Id.* Moreover, we must view the

24

evidence in a light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence. *Id.*

Turning to the issue of causation, we recognize that in cases where the causal connection between a claimant's work and his injury is not obvious, the connection must be established by unequivocal medical testimony. *Bemis v. Workers' Compensation Appeal Board (Perkiomen Grille Corp.)*, 35 A.3d 69 (Pa. Cmwlth. 2011). Whether an expert's testimony is unequivocal is a question of law fully reviewable on appeal. *Id.* In reaching that determination, we must review the testimony of a witness as a whole and not take words or phrases out of context. *Id.* An expert's testimony is unequivocal if, after providing a foundation, he states that he believes or thinks the facts exist. *Id.* In short, the expert must state not that the injury or condition may have possibly come from the assigned cause, but rather that in his professional opinion, the injury or condition did come from the assigned cause. *Id.* Nonetheless, the law does not require that every utterance from an expert on a medical subject be certain, positive, and without reservation or exception. *Id.* An expert's use of words such as "probably," "likely," and "somewhat" will not render the opinion equivocal as long as the expert does not recant his opinion as to causation. *Id.* at 72.

Here, Psychologist testified that Claimant did not have PTSD when he first began treating him in February 2011. First WCJ Op., F.F. No. 19; Greenwald Dep. at 14; R.R. at 222a. Psychologist further testified that Claimant did not have a PTSD reaction to the fire victim's death in 2009 until after Kotecki's death in October 2011. First WCJ Op., F.F. No. 19; Greenwald Dep. at 17; R.R. at 225a. Specifically, Psychologist testified as follows on direct examination:

> Q. [Claimant's Counsel] *At what point in time in the timeline do you believe [Claimant] developed [PTSD]?*

25

A. I've got that in the second row to the bottom where following the death, he not only had similar chest pain and he had some symptoms of acute stress, but he began to show lots of avoidance. He showed memories of nightmares of coming to harm, he had memories of the [woman] burning, his emotions were very labile. He had symptoms of depression, and so he met criteria for PTSD disorder at that time.

Q. [Employer's Counsel] *Excuse me doctor, when is that time?*

A. *Immediately following the death of his friend, [Kotecki].*

Greenwald Dep. at 17-18; R.R. at 225a-26a (emphasis added).

Further, when questioned by Employer's counsel on interim cross-examination as to whether Claimant manifested signs of PTSD prior to Kotecki's death and what event was the "tipping point," Psychologist replied: "I think that he manifested – according [to] my records and my opinion, *he didn't really meet all the criteria for PTSD until his friend got killed*." Greenwald Dep. at 34-35; R.R. at 242a-43a (emphasis added). Psychologist explained that Claimant may have had some of the symptoms of PTSD prior to Kotecki's death, but he did not have symptoms in each of the four domains necessary to call it PTSD. Greenwald Dep. at 37-38; R.R. at 245a-46a. Psychologist added at the end of direct examination that his opinions were made "within a reasonable degree of psychological certainty." Greenwald Dep. at 36; R.R. at 244a.

However, Employer asserts that on cross-examination, Psychologist testified that although he was sure that Claimant had PTSD, he could not be certain as to what exactly was the precipitating cause of Claimant's PTSD symptoms. *See* Greenwald Dep. at 64; R.R. at 272a. In *Cerro Metal Products Co. v. Workers' Compensation Appeal Board (Plewa)*, 855 A.2d 932 (Pa. Cmwlth. 2004), we

26

reasoned that even if a witness admits to some uncertainty, reservation, doubt or lack of information with respect to precise details, the witness's opinion will not be rendered equivocal if the witness does not recant the opinion first expressed.

Such is the case here. In particular, the WCJ found: "Importantly, [Psychologist] was not shaken of his opinions despite meticulous, exacting and expert cross-examination." First WCJ Op., F.F. No. 33. At no point did Psychologist recant his opinion that Claimant did not meet the criteria for PTSD until the shooting death of Kotecki. Consequently, we reject Employer's contention that Psychologist's opinions were equivocal as to the work-related causation of Claimant's PTSD. *See Bemis*; *Cerro Metal Products*.

### C. Substantial Evidence
### 1. Contentions

In its final argument, Employer contends that Claimant's testimony regarding the effect of Kotecki's death does not support the WCJ's finding that the officer's death materially aggravated Claimant's preexisting condition. *See* First WCJ Op., F.F. No. 31. To the contrary, Employer maintains that this finding is unsupported by the record and contrary to Psychologist's treatment notes.

More specifically, Employer asserts Claimant did not reference Kotecki's death in his claim petition. Also, most of Claimant's testimony dealt with how his emotional condition was impacted by his heart health, and his perceptions as to how badly Employer treated him. What is missing from Claimant's testimony, Employer argues, is any explanation of how Kotecki's death affected Claimant's preexisting emotional issues, including his panic attack disorder and depression in the days and weeks following the incident. Employer emphasizes that after

27

receiving a 10-day leave, Claimant returned to his regular duties and worked for months.

In addition, Employer contends that Psychologist's treatment notes do not support the WCJ's finding that Kotecki's death materially aggravated Claimant's preexisting condition. In particular, Employer asserts: Psychologist's October 25, 2011 notes, R.R. at 288a, indicate that Claimant was doing well; Psychologist's November 15, 2011 notes, R.R. at 287a, make no reference to Kotecki; and Psychologist's November 30, 2011 notes, R.R. at 286a, confirm that Claimant was not experiencing any symptoms of PTSD.

Summarizing, Employer argues the WCJ's award was premised on the fact that Kotecki's death served as a material contributing factor in producing Claimant's PTSD. However, the factual predicates for this determination are simply not contained in the record. Accordingly, Employer asserts this finding must be stricken and the WCJ's award of benefits reversed.

## 2. Analysis

As discussed above, Psychologist's testimony unequivocally established that Kotecki's death aggravated Claimant's preexisting psychological conditions, which resulted in Claimant's development of PTSD. As for Claimant's testimony, this Court will not attribute professional expertise to a layman who knows only that something is wrong with him. *Borough of Norwood*. To that end, PTSD is not an obvious or common injury apparent to the ordinary claimant. *Id.*

Nonetheless, when asked whether he could recall any specific instance, other than his cardiac incidents and panic attacks, which contributed to his mental condition, Claimant testified:

> There's been numerous events and suicides and accidents. But I guess the biggest one that sticks out in my mind is when a coworker was murdered in October 2011 at work. I was called out to the scene and helping the other officers that were there deal with it. I mean, at that time, I was in treatment for anxiety and depression for nine months at least.

N.T., 5/6/14, at 31; R.R. at 48a.

Consequently, the record contains substantial, competent evidence supporting the WCJ's findings that Kotecki's death constituted a tipping point in Claimant's development of PTSD. As noted above, prior to that incident, Claimant had some, but not all of the symptoms needed to meet the criteria for PTSD. Greenwald Dep. at 37-38; R.R. at 245a-46a. Following Kotecki's death, Claimant met all the criteria for a PTSD diagnosis. Greenwald Dep. at 34-35; R.R. at 242a-43a. As such, the WCJ's determination that Kotecki's death was a substantial contributing factor in Claimant's development of PTSD is adequately supported by the record.

For the same reason, we reject Employer's contention that Psychologist's treatment notes regarding the time frame immediately after Kotecki's death indicate that the incident did not cause Claimant's PTSD. When questioned about his notes, Psychologist clarified that he knew Claimant was upset about Kotecki's death even if his October 2011 notes did not accurately reflect that fact. Greenwald Dep. at 39; R.R. at 247a. Psychologist explained that he documents symptoms in his treatment notes, but not necessarily specific diagnostic changes. Greenwald Dep. at 41; R.R. at 249a.

Regardless, an expert's testimony is unequivocal if, after providing a foundation, he states that he believes or thinks the facts exist. *Bemis*. Even if an

expert admits to uncertainty, reservation or lack of information with respect to details, an expert's testimony remains unequivocal so long as the expert expresses a belief that, in his or her professional opinion, a fact exists. *Bemis*. Here, Psychologist testified that he treated Claimant since February 2011, and in his professional opinion, Claimant showed symptoms meeting the necessary criteria for PTSD following Kotecki's death in October 2011. Thus, we reject Employer's contention that inconsistencies in Psychologist's treatment notes render his opinion equivocal.

## III. Conclusion

For the above reasons, we discern no error in the WCJ's decision granting Claimant's claim petition. Accordingly, we affirm the Board's order.

_____
MICHAEL H. WOJCIK, Judge

30

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

City of Lower Burrell,        :
                                        :

                    Petitioner   :

                                          :

            v.                   : No. 120 C.D. 2019

                                          :

Workers' Compensation Appeal   :
Board (Babinsack),              :

                                          :

                  Respondent : 

## O R D E R

**AND NOW**, this 12th day of <u>March</u> 2020, the order of the Workers' Compensation Appeal Board, dated January 9, 2019, is **AFFIRMED**.

_____
MICHAEL H. WOJCIK, Judge